IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL LEE ROSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-370-JJF |
| ) | |
| D.O.C. COMMISSIONER STAN TAYLOR, ) | |
| First Correctional Medical, Correctional ) | |
| Medical Services, Dr. Niaz ) | TRIAL BY JURY |
| ) | OF TWELVE DEMANDED |
| Defendants. ) | |
| ) | |

MEMORANDUM OF POINTS AND AUTHORITIES OF
CORRECTIONAL MEDICAL SERVICES, INC. IN SUPPORT
OF ITS MOTION TO DISMISS

I.   STATEMENT OF FACTS AND PROCEDURAL POSTURE

Correctional Medical Services, Inc. ("CMS") is a private corporation that has contracted with the State of Delaware to provide medical services in Delaware prisons beginning on July 1, 2005.[1] The inmate drafted this Complaint on May 30, 2006 and this lawsuit was filed on June 5, 2006. Specifically, according to the Complaint, plaintiff asserts:

> I was locked up in [November] 2001 I let First Correctional medical know I had hepatitis C and ned [sic] medical help. They refused. While at Gander Hill I was put in the hole, than [sic] later taken to the hospital liver shut down. The nurse in charge send me to hospital. [H]e stated I would have died in 24 hours. I spent 3 days came back, never to receive any help I needed. I came to DCC 2004 I ask every dr. there for help. I was refused. Later I all most [sic] died, then Dr. Niaz told me I had 6 months to live I was told by the Grievance Bord [sic] I was a waste of tax payers money being refused treatment led to cirrhosis of the liver.[2]

Under Section II of the same Complaint, identification of Defendants, the inmate writes, "I came to DCC in 2004. Refused medical treatment now has 6 months to 1 year. Refused by Dr. Niaz Correctional Medical Services."

---

[1] Prior to July 1, 2005, CMS had contracted with the State of Delaware to provide medical care from July 1, 2000 until June 30, 2002.

[2] D.I. 2 at § IV "Statement of Claim".

This is CMS' Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's Claims.

## II.	STANDARD OF REVIEW

A claim may be dismissed because it fails to allege sufficient facts to support a cognizable legal claim.[3] A complaint "must provide the defendants with fair notice of what plaintiff's claim is and the grounds upon which it rests."[4] Specifically, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.[5] Additionally, even a *pro se* litigant must plead sufficient facts to sustain a legal claim.[6]

A motion to dismiss for failure to state a claim upon which relief can be granted should be awarded in the event that it is "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[7] However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[8]

A defendant in a civil rights action must have personal involvement in the alleged wrongs.[9] Personal involvement is shown through allegations of personal direction or of actual knowledge and acquiescence of an employee's actions by someone of authority within a corporation.[10] Allegations of participation or actual knowledge and acquiescence, however, must

---

[3] Fed. R. Civ. P. 12 (b)(6).
[4] *United States v. City of Philadelphia*, 644 F.2d 187, 204 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).
[5] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(*citing Boykins v. Ambridge Area Scholl District*, 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978)).
[6] *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).
[7] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).
[8] *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 6 (3d Cir. 1997)(*citing In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)(*quoting Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)); *citing* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations"); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) (affirming dismissal of § 1983 action and noting that "while the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").
[9] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)(citations omitted)
[10] *Id.*

be made with appropriate particularity.[11] Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff.[12]

An affirmative defense, such as the failure to exhaust administrative remedies, is appropriately considered on a Rule 12(b)(6) motion if it presents an "insuperable barrier to recovery by the plaintiff."[13]

### III.    LEGAL ARGUMENTS

#### A.    Plaintiff's Claims Against CMS Are Barred By The Statute Of Limitations

The statute of limitations applicable to suits brought under 42 U.S.C. §1983 are determined by each state, and, for this purpose, §1983 actions should be characterized as personal injury actions.[14] In Delaware, the statute of limitations to be applied in §1983 actions is the two-year limitation period set forth in § 8119.[15]

Plaintiff's 42 U.S.C. § 1983 claims, to the extent that they can be construed as against CMS, and to the extent the claims reference care and treatment by CMS that occurred more than two years prior to June 6, 2006, the date of the filing of plaintiff's Complaint, these claims should be dismissed as they are barred by the applicable two-year statute of limitations, 10 *Del. C.* § 8119.

#### B.    Plaintiff Fails To State A Claim For A Constitutional Violation

---

[11] *Id.* (emphasis supplied).

[12] *Smaple v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1989; *see also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Correctional Institute for Women*, 128 Fed.Appx. 240 (3d Cir. 2005).

[13] *Ray v. Kertes*, 285 F.3d 287, 295, n. 8 (3d Cir. 2002)(quoting Flight Systems Inc. v. Electric Data Systems Corp., 112 F.3d 124, 127 (3d Cir. 1997)( "an affirmative defense ... is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff.").

[14] *Wilson v. Garcia*, 471 U.S. 261 (1985).

[15] *McDowell v. Delaware State Police,* 88 F.3d 188, 190 (3d Cir. 1996); *Carr v. Town of Dewey Beach,* 730 F. Supp. 591 (D. Del. 1990); *Marker v. Talley,* 502 A.2d 972 (Del. Super. Ct. 1985). 10 *Del. C.* § 8119 states, in pertinent part,
> No action for the recovery of damages upon a claim for alleged personal injuries shall be brought after the expiration of 2 years from the date upon which it is claimed that such alleged injuries were sustained….

**Against CMS**

In an Eighth Amendment violation for failure to provide adequate medical treatment to a prisoner, an act of a prison official becomes a constitutional violation only when it results from the "deliberate indifference to a prisoner's serious illness or injury."[16] Thus, *Estelle* requires plaintiffs to satisfy a two-prong test in order to impose liability under § 1983:   i) deliberate indifference on the part of prison officials; and ii)  the prisoner's medical needs must be serious.[17]  However, the *Estelle* Court has also clarified the standard in that:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. [18]

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"[19]   The acts complained of must be accompanied by a "reckless disregard" of or "actual intent" to disregard a serious medical condition.[20]  Thus, a defendant's conduct does not constitute a "deliberate indifference" unless it is alleged to occur in conjunction with the requisite mental state.

Under plaintiff's Statement of Claim, the *inmate does not even mention CMS*.  Instead, the inmate asserts, generally, some time in 2004, he asked "every Dr. [at DCC] for help.  I was refused."  Even assuming, *arguendo*, that the inmate has identified a "serious medical need" in

---

[16]  *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).
[17]  *Id.*
[18]  *Id*. at 105-06(citations omitted)(emphasis supplied).
[19]  *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)(quoting *Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J. 1979)).
[20]  *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).

his Complaint[21], he fails to identify *any* conduct by CMS, nor does he identify a specific time when these constitutional violations occurred, and, finally, there is no mention of the person or persons responsible for any alleged refusal of medical treatment. Moreover, *CMS was not the contract provider of health care at DCC in 2004.*

These allegations, to the extent that they can be construed as against CMS, are, at best, bald assertions and/or legal conclusions. The inmate fails to identify the conduct, time, place, and persons responsible for his alleged constitutional violations. CMS is entitled to such specificity. This Complaint must be dismissed against CMS.

Moreover, to state a claim against CMS, a private corporation rather than a person, a discrete standard applies. Assuming, *arguendo*, that plaintiff states a claim for an Eighth Amendment violation against an individual health care provider, plaintiff does not state a claim against CMS.

### 1. CMS cannot be held liable under a theory of *respondeat superior.*

To the extent that plaintiff's allegations in the Complaint can be construed as against CMS, the allegations appear to be grounded solely under a theory of *respondeat superior*. Under *Monell v. Department of Social Services of New York,* a municipality cannot be held liable under a theory of *respondeat superior*.[22] These principles likewise apply to the liability of private corporations offering health care services.[23] CMS cannot be held liable for a constitutional violation as an abstract entity.[24]

---

[21] CMS points out that the inmate fails to identify symptomology that required medical treatment.
[22] 436 U.S. 658 (1978). *See also Heine v. Receiving Area Personnel*, 711 F.Supp. 178, 185 (D.Del. 1989) ("Traditional concepts of *respondeat superior* do not apply to civil rights actions brought pursuant to 42 U.S.C. § 1983.").
[23] *Miller v. Correctional Medical Systems, Inc.*, 802 F. Supp. 1126, 1132 (citing *Guyer v. Correctional Medical Systems, Inc.*, C. A. No. 86-361-JLL, Magistrate's Report and Recommendation, slip. op. at 3 (D. Del. Apr. 16, 1990)(adopted by final order May 14, 1990)).
[24] *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1063 (3d Cir. 1991).

Here, the inmate claims,[25] "I came to DCC in 2004. Refused medical treatment now has 6 months to 1 year.  Refused by Dr. Niaz Correctional Medical Services."  Other than the naming of CMS as a defendant, *this statement is the only mention of CMS in the Complaint*.  Since CMS cannot be liable under a theory of *respondeat superior*, CMS is entitled to dismissal of these claims against it.

### 2. Plaintiff fails to assert a policy or custom of deliberate indifference to his serious medical needs.

Plaintiff fails to state a claim against CMS since he fails to even allege a policy or custom applied by CMS, nor does he allege that a CMS official, who has the power to make policy, is responsible for either i)  an affirmative proclamation of a policy of deliberate indifference to his serious medical needs or ii)  acquiescence in a well-settled custom of deliberate indifference to his serious medical needs.

While a municipality cannot be held liable under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference.[26]  "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict."[27]  Specifically, municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered."[28]  Second, only those officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability.[29]  Third, whether a particular official has "final policymaking authority" is a question of state law.[30]  Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy.[31]

---

[25] D.I. 2 at Section II.
[26] *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978).
[27] *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)(quoting *Pembaur v City of Cincinnati*, 475 U.S. 469, 481 (1986)).
[28] *Penbaur*, 475 U.S. at 480.
[29] *Id* at 483.
[30] *Id*.
[31] *Id*. at 482-483, and n.12.

In *St. Louis v. Praprotnik,* the Supreme Court made it clear that "the authority to make municipal policy is necessarily the authority to make *final* policy."[32] There can be no *de facto* final policymaking authority.[33] Moreover, "it is self-evident that official policies can only be adopted by those legally charged with doing so...[the Supreme Court] are aware of nothing in § 1983 or its legislative history…that would support the notion that unauthorized acts of subordinate employees are official policies because they may have the "potential" to become official policies or may be "perceived as" official policies.[34]

Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.[35] A single isolated incident…cannot establish an official policy or practice of the municipality sufficient to render it liable for damages under 1983.[36] In either instance, when a plaintiff alleges as unconstitutional policy or an unconstitutional custom, *a plaintiff must allege that the official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.*[37]

Plaintiff has not alleged *any* policy or custom, let alone any *specific* policy or custom, of CMS that proximately caused deliberate indifference to his serious medical needs, nor identified any CMS official who has the power to make such a policy, nor articulated any facts that would tend to support a claim of "an official proclamation, policy or edict", nor any "well-settled and permanent course of conduct" by CMS. CMS is entitled to dismissal of this Complaint against it.

---

[32] 485 U.S. 112, 127 (1987).
[33] *Id.* at 131. Arguably, under no circumstances could CMS be liable for a unconstitutional "policy".
[34] *Praprotnik*, 485 U.S. at 125.
[35] *Andrews*, 895 F.2d at 1480; *see also Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence.").
[36] *Oklahoma City v. Tuttle*, 471 U.S. 808 (1988).
[37] *Andrews*, 895 F.2d at 1480.

### C. Plaintiff's Complaint Against CMS Must Be Dismissed Pursuant To Fed. Ct. Civ. R.12 (b)(6) Because The Plaintiff Has Failed To Exhaust Administrative Remedies.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law."[38] "The doctrine provides 'that *no one is entitled to judicial relief* for a supposed or threatened injury *until the prescribed administrative remedy has been exhausted.*'"[39]

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.[40]. The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[41] "Prison conditions" have been defined to include the nature of the services provided therein.[42] Furthermore, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."[43]

The PLRA mandates that inmates *properly* exhaust administrative remedies before filing suit in federal court.[44] "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."[45] *Prisoners must exhaust administrative remedies before submitting any papers to the federal courts.*[46]

---

[38] *McKart v. United States*, 395 U.S. 185, 193 (1969).
[39] *Id.* (emphasis supplied)(quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)).
[40] *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).
[41] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).
[42] *Booth,* 206 F.3d at 291.
[43] *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).
[44] *Woodford,* 126 S.Ct. at 2387 (emphasis supplied).
[45] *Id.* at 2386.
[46] *Vaden v. Summerhill*, 449 F.3d 1047, 1048, 1051 (9th Cir, 2006); *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002).

The Delaware Department of Corrections has established administrative procedures that an inmate must follow to file a medical grievance.[47] An inmate must file a grievance with the Inmate Grievance Chairperson ("IGC") who then forwards it to the medical staff for review. If action needs to be taken, the medical staff is required to attempt an informal resolution of the grievance with the inmate. If the grievance cannot be resolved informally, the grievance is forwarded to the Medical Grievance Committee ("MGC") to conduct a hearing. If the decision of the MGC does not satisfy the inmate, the inmate may complete a MGC Appeal Statement which is then submitted to the Bureau Grievance Officer ("BGO").[48] The BGO will recommend a course of action to the Bureau Chief of Prisons, who renders the final decision.[49]

Plaintiff complains of prison conditions, which under 42 U.S.C. §1997e(a) requires him to exhaust the administrative remedies available to him. In addition to the Complaint, the inmate has filed documentation of the grievance procedure that he has undergone. D.I. 7. However, this documentation demonstrates that, in fact, the grievance procedure was not exhausted as required by federal law. Specifically, the paperwork submitted by the inmate indicates that the second procedural step was completed. Specifically, *the Medical Grievance Committee conducted a hearing on May 23, 2006.* Thus, the next procedural step in the grievance procedure that should have been completed by the inmate is a MGC Appeal Statement, which then would have been submitted to the BGO. However, this *Complaint was drafted no less than one week later*, on May 30, 2006, and filed with this Court on June 6, 2006.

As demonstrated by the inmate's own documentation, in this case, the BGO never had an opportunity to recommend a course of action to the Bureau Chief of Prisons, who would have rendered the final decision on the grievance. The timing of plaintiff's Complaint, along with plaintiff's own grievance documentation, provides the "insuperable barrier" to the plaintiff's

---

[47] *Frink v. Williams*, 2005 U.S. Dist. LEXIS 21043 (D.Del. 2005).
[48] *Id.*
[49] *Id.*

recovery in this case. This Complaint must be dismissed for failure to properly exhaust administrative remedies as required by federal law.

## IV.  CONCLUSION

Based upon the foregoing, all claims against Defendant, Correctional Medical Services, should be dismissed pursuant to Federal Rule of Civil Procedure 12 (b)(6) for failure to state any claim upon which relief can be granted. Accordingly, Defendant, Correctional Medical Services, Inc., respectfully requests that the Motion to Dismiss filed contemporaneously herewith be granted, with prejudice.

                              MARSHALL, DENNEHEY, WARNER,
                              COLEMAN & GOGGIN

BY:   */s/ Kevin J.Connors*
        KEVIN J. CONNORS, ESQ. (I.D. #2135)
        LORENZA A. WOLHAR, ESQ. (I.D. #3971)
        1220 North Market Street, 5th Fl.
        P.O. Box 8888
        Wilmington, DE 19899-8888
        Attorneys for Defendant, Correctional Medical Services, Inc.

DATED:  October 31, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **MICHAEL LEE ROSE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-370-JJF |
| | ) | |
| **D.O.C. COMMISSIONER STAN TAYLOR,** | ) | |
| First Correctional Medical, Correctional | ) | |
| Medical Services, Dr. Niaz | ) | TRIAL BY JURY |
| | ) | OF TWELVE DEMANDED |
| Defendants. | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2006, I electronically filed the Memorandum of Points and Authorities of Correctional Medical Services, Inc. in Support of its Motion to Dismiss with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

I hereby certify that on October 31, 2006, I have mailed by United States Postal Service, the Memorandum of Points and Authorities of Correctional Medical Services, Inc. in Support of its Motion to Dismiss to the following non-registered participant:

Michael Lee Rose
SBI# 097880
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

                        MARSHALL, DENNEHEY, WARNER,
                        COLEMAN & GOGGIN

BY:   */s/ Kevin J.Connors*
        KEVIN J. CONNORS, ESQUIRE (DE I.D. #2135)
        LORENZA A. WOLHAR, ESQUIRE (DE I.D. #3971)
        1220 North Market Street, 5th Fl.
        P.O. Box 8888
        Wilmington, DE 19899-8888
        (302) 552-4300
        Attorneys for Defendant, Correctional Medical Services, Inc.