IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MICHAEL LEE ROSE,                  :
                                   :
     Plaintiff,                    :
                                   :
     v.                            : Civ. No. 06-370-JJF
                                   :
FIRST CORRECTIONAL MEDICAL,        :
CORRECTIONAL MEDICAL SERVICES,     :
and DR. NIAZ,                      :
                                   :
          Defendants.              :

Michael Lee Rose, Pro se Plaintiff, Delaware Correctional Center, Smyrna, Delaware.

Daniel L. McKenty, Esquire, Heckler & Frabizzio, Wilmington, Delaware. Attorney for Defendant First Correctional Medical.

Kevin J. Connors, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware. Attorney for Defendant Correctional Medical Services.

Lorenza Anna Wolhar, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware. Attorney for Defendant Dr. Niaz.

**MEMORANDUM OPINION**

September 28, 2007
Wilmington, Delaware

Farnan, District Judge

Presently before the Court are Motions To Dismiss filed by Defendants Correctional Medical Services, Inc., ("CMS") (D.I. 18), Dr. Muhammed A. Niaz ("Dr. Niaz") (D.I. 21), and First Correctional Medical ("FCM") (D.I. 27), the Response of Plaintiff, Michael Lee Rose ("Plaintiff") (D.I. 23), and the Reply of CMS and Dr. Niaz (D.I. 25). For the reasons set forth below, the Court will grant in part and deny in part the Motions To Dismiss. The Court will give Plaintiff leave to amend the Complaint.

I.  BACKGROUND

The Complaint alleges that as early as November 2001, FCM knew Plaintiff had Hepatitis C and needed medical care, but refused to provide it to him. The Complaint alleges that Plaintiff asked "every doctor in [FCM]" to give him medical care for his condition, but they refused. The Complaint alleges that Plaintiff "came to DCC in 2004 and ask [sic] every doctor for help", and was again refused. The Complaint alleges that Plaintiff was later told by Dr. Niaz that he had six months to live, but was refused treatment by Dr. Niaz and CMS.

## II. DISCUSSION

### A. Standard of Law

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).

The Court must accept all factual allegations in the Complaint as true and take them in the light most favorable to Plaintiff. Erickson v. Pardus, -U.S.-, 127 S.Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, -U.S.-, 127 S.Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint does not need detailed factual allegations, however "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965 (citations omitted). The "[f]actual allegations must be enough

to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). Because Plaintiff proceeds pro se, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. Erickson v. Pardus, -U.S.-, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

    B.  **Statute of Limitations**

CMS and Dr. Niaz move for dismissal on claims as alleged by Plaintiff that occurred more than two years prior to June 6, 2006, on the basis that said claims are barred by the applicable two year limitations period. CMS and Dr. Niaz use an incorrect filing date. Nonetheless, their position is well-taken.

The Complaint was signed on May 30, 2006, which is the earliest date that it could have been delivered to prison officials for mailing to the Court. Pursuant to the "mailbox rule" the Complaint is filed on the date it is delivered to prison officials for mailing, not the date that it is marked filed. See Houston v. Lack, 487 U.S. 266 (1988); Burns v. Morton, 134 F.3d 109, 112 (3d Cir. 1998); Gibbs v. Decker, 234 F. Supp. 2d 458, 463 (D. Del. 2002); Rivers v. Horn, 2001 WL 312236,

at *1 n.1 (E.D. Pa. March 29, 2001). Accordingly, the limitations period began to run two years prior to May 30, 2006.

For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. Wilson v. Garcia, 471 U.S. 261, 275 (1983). In Delaware, § 1983 claims are subject to a two-year limitations period. See Del. Code Ann. tit. 10, § 8119; Johnson v. Cullen, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." Id. Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. See Smith v. State, C.A. No. 99-440-JJF, 2001 WL 845654, at *2 (D. Del. July 24, 2001).

The Complaint makes reference to actions taken in 2001 and in 2004. The 2001 allegations are clearly barred by the limitations period. Because no specific date is given for the 2004 allegations, the Court is unable to discern if those allegations are also barred. Based upon the foregoing, the Court will grant the Motion To Dismiss Plaintiff's claims that occurred prior to May 30, 2004.

### C. Failure to State a Claim

All Defendants move for dismissal on the basis that the Complaint fails to state a claim upon which relief may be

granted. The allegations in the Complaint are scant, but they are serious. Plaintiff alleges he has Hepatitis C, needed medical care, apparently was told he had a limited time to live, and the Defendants refused to treat him.

A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir.1978)). As the Complaint now stands, it fails to provide sufficient information for Defendants to adequately respond to the allegations. It does not mention specific dates when Defendants allegedly refused to provide medical care or what type of care Plaintiff was allegedly refused. Plaintiff also appears to allege that CMS and FMC are liable under a theory of respondeat superior. As is well-known, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. See Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, the Court will grant Defendants' Motions to Dismiss. Plaintiff, however, will be given leave to amend his Complaint to correct the pleading deficiencies.

### D. Medical Malpractice

FCM moves to dismiss any medical negligence claims on the basis that Plaintiff failed to accompany the complaint with an affidavit of merit as required by 18 Del. C. § 6853(a)(1). Plaintiff does not appear to allege medical negligence. However, if he does, FCM's Motion is well-taken. Plaintiff has not filed the required affidavit and, therefore, the Court will grant FCM's Motion To Dismiss the Complaint to the extent it alleges a medical negligence claim.

### E. Administrative Remedies

All moving Defendants argue that Plaintiff did not exhaust his administrative remedies as is required under 42 U.S.C. § 1997e(a) and, therefore, the Complaint must be dismissed. Plaintiff submitted documents regarding exhaustion which the Court will consider. See Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004) (Authentic records documents relating to the issue of exhaustion, may be considered without converting a motion to dismiss to a motion for summary judgment.)

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint. Jones v. Bock, -U.S.-, 127 S.Ct. 910 (2007). Failure to exhaust administrative remedies must be pled and proved by the defendant. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). Under Woodford v. Ngo, -U.S.-, 126 S.Ct. 2378, 2382 (2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 2384. As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA. See Woodford, 126 S.Ct. at 2388. The PLRA does not require the grievance and complaint to be identical

because inmates are required to complete the applicable administrative prison process (such as a grievance procedure) even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief. Jackson v. Ivens, No. 04-1977, 2007 WL 2261552, at *4 (3d Cir. July 10, 2007) (citing Booth v. Churner, 532 U.S. 731, 746 (2001)).

Exhaustion is mandatory. Woodford, 126 S.Ct. at 2382 (citations omitted). The exhaustion requirement is absolute, absent circumstances where no administrative remedy is available. See Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir. 2004); Nyhuis v. Reno, 204 F.3d 65, 67 (3d. Cir. 2000); but see Freeman v. Snyder, No. 98-636-GMS, 2001 WL 515258, at *7 (D. Del. Apr. 10, 2001) (finding that if no administrative remedy is available, the exhaustion requirement need not be met). However, if prison authorities thwart the inmate's efforts to pursue the grievance, administrative remedies may be presumed exhausted, as no further remedies are "available" to him. Brown v. Croak, 312 F.3d 109, 112-13 (3d Cir. 2002).

Delaware Department of Correction ("DOC") administrative procedures provide for a multi-tiered grievance and appeal process that an inmate must follow for the presentation and resolution of medical grievances. DOC Policy 4.4. (revised May

15, 1998). Medical grievances are first forwarded to the medical services staff who attempt an informal resolution of the matter. Baylis v. Taylor, 475 F. Supp.2d 484, 488 (D. Del. 2007). If this fails, the grievance goes to the Medical Grievance Committee, which conducts a hearing. Jackson v. Ivens, No. 04-1977, 2007 WL 2261552, at *3 (3d Cir. July 10, 2007). Resolution closes the case. Id. If the matter is still not resolved, the inmate may appeal by completing a Medical Grievance Committee Appeal Statement which is submitted to the Bureau Grievance Officer. Jackson v. Ivens, 2007 WL 2261552 at *5, n.5. The Bureau Grievance Officer then recommends a course of action to the Bureau Chief of Prisons, who renders a final decision. Jackson v. Ivens, 2007 WL 2261552 at n.5.

    Plaintiff submitted a grievance on February 27, 2006, No. 24075.[1] The grievance complained that a large spot was found on Plaintiff's lung, Dr. Niaz told Plaintiff nothing could be done, and he gave Plaintiff six months to one year to live. (D.I. 7.) The grievance states the spot resulted from refusal of medical treatment in 2001. Id. An investigation ensued and the investigation report stated, "schedule inmate with DR line to

---

[1] Documents submitted by Plaintiff indicate that he filed a grievance on September 8, 2002, requesting the return of clothing and shoes taken from him when he was "placed in the hole." (D.I. 7.) The September 8, 2002 grievance is irrelevant to this case.

-9-

discuss prognosis, next level." Id. The matter remained unresolved and on March 27, 2006, it was forwarded to the Medical Grievance Committee. Id. A hearing was held on May 23, 2006, and on May 24, 2006, the Medical Grievance Committee recommended that Plaintiff be scheduled to see Dr. Niaz, however, the matter remained unresolved. Id.

Defendants argue that Plaintiff did not exhaust his administrative remedies. They point to Plaintiff's paperwork which indicates that the Medical Grievance Committee conducted its hearing on May 23, 2006, and its recommendation should have been followed by a Medical Grievance Committee Appeal statement submitted to the Bureau Grievance Officer. They point out that the Complaint was drafted just one week later, on May 30, 2006, thus denying the Bureau Grievance Offer an opportunity to recommend a course of action to the Bureau Chief of Prisons.

Plaintiff responds that when he went to the "Second Phase" he was told that treating him would be a waste of taxpayers money, and the Board sent him back to Dr. Niaz. Plaintiff further responds that Dr. Niaz "had already refused to help, [he] was at a dead end and running out of time. [He] had no where to go, but to Court." (D.I. 23.)

Defendants must prove Plaintiff failed to exhaust his administrative remedies. They submitted no documents to the

Court and rely solely upon exhibits Plaintiff submitted to support his request for appointment of counsel. (D.I. 6, 7.) Those exhibits indicate that the remedy provided to Plaintiff was to schedule him to see Dr. Niaz, the very person he alleges refused to treat him. Based upon the documentation submitted to the Court, and at this stage of the proceedings the Court presumes that administrative remedies were exhausted. Therefore, the Court will deny the Motions To Dismiss on the basis of failure to exhaust administrative remedies.

## III. CONCLUSION

Based upon the foregoing analysis, the Court will grant in part and deny in part Defendants' Motions To Dismiss. (D.I. 18, 21, 27.) Plaintiff will be given leave to amend the Complaint.

An appropriate Order will be entered.