IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL LEE ROSE, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 06-370-JJF |
| ) | |
| D.O.C. COMMISSIONER STAN TAYLOR, ) | |
| First Correctional Medical, Correctional ) | |
| Medical Services, Dr. Niaz ) | TRIAL BY JURY |
| ) | OF TWELVE DEMANDED |
| **Defendants.** ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF DEFENDANTS, CORRECTIONAL MEDICAL SYSTEMS AND DR. NIAZ, TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, INCORRECTLY DESIGNATED AS "MOTION TO AMEND"[1]**

I.   STATEMENT OF FACTS AND PROCEDURAL POSTURE

On June 5, 2006, Plaintiff filed a Complaint in this matter alleging violations of his civil rights pursuant to 42 *U.S.C.* § 1983. (D.I. 2). A copy of Plaintiff's Complaint is attached as Exhibit "1". On November 7, 2006, Motions to Dismiss were filed by Defendants, CMS and Dr. Niaz. (D.I. 18, 21). On September 28, 2007, this Honorable Court entered an Order dismissing all of Plaintiff's claims that occurred prior to May 30, 2004. (D.I. 34 at 4). In addition, the Court granted the Motions to Dismiss for failure to state a claim because the Complaint failed to provide sufficient information for Defendants to adequately respond to the allegations. However, the Court granted Plaintiff leave to amend the Complaint to correct the pleading deficiencies. (D.I. 34 at 5). Plaintiff had thirty (30) days from September 28, 2007 in which to amend his Complaint. (D.I. 34). In addition, the Court presumed that administrative remedies

---

[1] Moving Defendants waive their right to file an Opening Brief and submit this Memorandum of Points and Authorities in lieu thereof pursuant to Local Rule 7.1.2. However, Moving Defendants reserve the right to file a Reply Brief.

had been exhausted based upon the documentation submitted in support of the Motion to Dismiss and denied the Motions to Dismiss of CMS and Dr. Niaz on these grounds. (D.I. 34 at 11).

On October 29, 2007, Plaintiff filed a "Motion to Amend". A copy of Plaintiff's Motion to Amend (D.I. 43) is attached as Exhibit "2". It is presumed Plaintiff meant this filing to be an Amended Complaint and Moving Defendants are treating it as such. In the Motion to Amend, Plaintiff alleges that he was treated at Kent General Hospital on September 8, 2005 as a result of fluid retention. (D.I. 43 at 2). He alleges that he was told at this time that his liver and kidneys had shut down. He further alleges that he was suffering mental confusion at the time. Plaintiff also alleges in his Motion to Amend that he only saw Dr. Niaz once on August 12, 2005 at which time he was told that there was nothing which could be done for his hepatitis C condition. (D.I. 43 at 2). He also alleges that he received treatment from St. Francis Hospital on September 19, 2005 at which time his liver and kidneys shut down again. He states that he was hospitalized for one to one and a half weeks at St. Francis Hospital as a result. Plaintiff avers that Dr. Niaz treated him at St. Francis Hospital at this time told him he had six (6) months to one (1) year to live and that Dr. Niaz had indicated that a spot had been found on Plaintiff's lung. (D.I. 43 at 3-4). Plaintiff seeks relief from the Court for CMS and Dr. Niaz purportedly refusing to treat him with interferon and refusing to check on his lung. He also alleges that he needs a liver transplant or he will die. (D.I. 43 at 5, 8)

Correctional Medical Services, Inc. ("CMS") is a private corporation that has contracted with the State of Delaware to provide medical services in Delaware prisons beginning on July 1, 2005.[2]

---

[2] Prior to July 1, 2005, CMS had contracted with the State of Delaware to provide medical care from July 1, 2000 until June 30, 2002. First Correctional Medical was Delaware's prison healthcare provider from July 1, 2002 until June 30, 2005.

Plaintiff has alcohol related (ETOH) liver disease with a past history of liver failure and heart problems that was documented as far back as 2003. See medical report attached as Exhibit "3". As a result, Plaintiff's medical conditions have been closely followed, including frequent and regular testing of his blood. *Id.*; See results of copious amounts of lab work attached as Exhibit "13" and Progress Notes attached as Exhibit "6". In addition, Plaintiff is diabetic and is closely followed for this condition. *See* Insulin Administration Records attached as Exhibit "15".

Plaintiff has been diagnosed with several psychiatric diagnoses including post traumatic stress disorder, polysubstance dependence and antisocial personality disorder. In addition, he has been diagnosed with hepatitis C, atrial fibrillation, history of malaria and multiple injuries related to his duty in the military in Vietnam and to bar fights in which he was involved. Plaintiff admitted to a history of taking intravenous heroin from 1971-1974, using 10 mg Percocets at the rate of three pills per day, extensive alcohol use up to the amount of twenty-five (25) to thirty (30) beers in a twenty-four (24) hour period of time, smoking marijuana at the rate of two (2) joints per day, use of four (4) 1 mg Xanax pills per day, amphetamines through 1982 at which time he quit because of liver problems, cocaine until 1984 at which time he almost overdosed and quit, and mescaline and acid. *See* October 30, 2003 report of Sylvia Foster, M.D. attached as Exhibit "3". An EKG performed on April 3, 2002 revealed slight left ventricular dilatation with preserved left ventricular systolic function and contractility, left atrial enlargement, aortic root dilation, slight right ventricle dilatation and calcified mitral valvular chorade tenideae. *See* medical records attached as Exhibit "4".

Plaintiff went into liver and kidney failure and was taken to Kent General Hospital on September 22, 2005 where he remained until September 29, 2005. While hospitalized, he

underwent guided paracentesis[3]. *See* Progress Notes from Kent General Hospital attached as Exhibit "7". On September 29, 2005, Plaintiff was discharged back to Delaware Correctional Center ("DCC") where he was housed in the infirmary and monitored multiple times each day through October 4, 2005 when he was transferred to St. Francis Emergency Room due to complaints of shortness of breath and swelling in his abdomen and bilateral lower extremities. *See* Inter Disciplinary Progress Notes attached as Exhibit "8" and St. Francis Patient Progress Notes attached as Exhibit "14". Plaintiff was discharged back to DCC on October 11, 2005 where he was again housed in the infirmary and monitored daily through December 19, 2005 at which time he had stabilized and was discharged from the infirmary. *See* Exhibit "7".

On October 10, 2005, Plaintiff was sent to St. Francis Hospital due to difficulty voiding. He was diagnosed with posterior urethral stricture and nonobstructive prostatic hypertrophy. Id.

During the 2005 period of time of which Plaintiff claims he did not receive care to the present, he received medications, including: Lopressor, Alburide, Soma, Robaxin, Amylase, Motrin, Imodium, Lasix, Coumadin, Tylenol, Nubain, Guie toradol, Dilaudid, Ketorlac, Metomolol, Digoxin, Aldactone, Metamucil, Lactourole, Lortab, thiamine, magnesium, and magnesium oxide. *See* Physicians' Orders, Medication Administration Records and Self Medication MARs attached as Exhibit "5". He was also seen on a regular basis by medical staff. *See* Inter Disciplinary Progress Notes and Chronic Disease Clinic Follow-Up notes attached as Exhibit "18". In addition, Plaintiff was prescribed a restricted diet and cystoscopy. *Id*. The cystoscopy was performed on October 10, 2005 which revealed posterior urethral stricture and nonobstructive prostatic hypertrophy. *See* Operative Report attached as Exhibit "4". During this period of time, Plaintiff also had regular blood work multiple times per month.. *See* lab results

---

[3] Use of a ultrasound to guide a needle in order to remove fluid. *See* http://www.rt-image.com/Ultrasound_Guided_Paracentesis_A_safe_and_effective_procedure/content=9004J05C4876BC8640569A76444090441

attached as Exhibit "13". In addition, Plaintiff refused to take Baclofen and refused to treat with Dr. Niaz as a result of his filing this civil action. See September 21, 2006 and October 21, 2006 Release of Responsibility forms attached as Exhibit "17". Lastly, he underwent a Dual Isotope Myocardial Perfusion Study performed on February 10, 2005, in which was negative. *See* Exhibit "9".

On September 26, 2005, a chest x-ray revealed a pleural based density in the posterior base. As a result, on September 27, 2005, a CT was performed on the chest which indicated there were no lung masses or infiltrates. A small left pleural effusion[4] with a potential loculated component was noted. *See* diagnostic reports attached as Exhibit "9". On January 6, 2006 a hard lump was noted on physical exam under the right nipple and a much smaller nodule was noted under the left nipple. *See* January 6, 2006 Interdisciplinary Note attached as Exhibit "6". This was confirmed by ultrasound. A subsequent mammogram was performed at Kent General Hospital which revealed gynecomastia[5] and dense fibroglandular tissue in both retroareolar regions. No mammographic evidence for malignancy existed. *See* May 10, 2006 Diagnostic Imaging Department Consultation Report from Kent General Hospital attached as Exhibit "9".

On February 1, 2007, a CT of the left upper quadrant was performed which revealed lobulated cirrhotic liver, small ascites around the liver, fat around the ascending colon and suspicious poorly calcified gallstones. *See* report of February 1, 2007 CT of the abdomen attached as Exhibit "4". On November 2, 2007, Plaintiff consulted Levente J. Szalai, M.D., a surgeon. Dr. Szalai opined that Plaintiff had a high risk of morbidity or mortality for a cholecystectomy due to his significant medical history. Dr. Szalai also indicated he was not

---

[4] Pleural effusion is the accumulation of excess fluid between the two membranes that envelope the lungs. www.medterms.com/script/main/art.asp?articlekey=4946.

[5] Development of abnormally large mammary glands in males. http://en.wikipedia.,org/wiki/Gynecomastia.

certain Plaintiff's symptoms were actually due to symptomatic cholelithiasis, but also would not be surprised, after further testing, if Plaintiff was a Child's C cirrhotic.  *See* report of Levente J. Szalai, M.D. dated November 2, 2007 attached as Exhibit "16".  On December 13, 2007, Plaintiff underwent an ultrasound to the right upper quadrant.  *See* Exhibit "4".  Lastly, Plaintiff received full upper and partial lower dentures on April 24, 2008.  *See* Exhibit "19".

## II.   STANDARD OF REVIEW

A claim may be dismissed because it fails to allege sufficient facts to support a cognizable legal claim.[6]  A complaint "must provide the defendants with fair notice of what plaintiff's claim is and the grounds upon which it rests."[7]  Specifically, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.[8]  Additionally, even a *pro se* litigant must plead sufficient facts to sustain a legal claim.[9]

A motion to dismiss for failure to state a claim upon which relief can be granted should be awarded in the event that it is "beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[10]  However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."[11]

---

[6] Fed. R. Civ. P. 12 (b)(6).

[7] *United States v. City of Philadelphia*, 644 F.2d 187, 204 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[8] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)(*citing Boykins v. Ambridge Area Scholl District*, 621 F.2d 75, 80 (3d Cir. 1980); *Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978)).

[9] *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

[10] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

[11] *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 6  (3d Cir. 1997)(*citing In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)(*quoting Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)); *citing* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations"); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) (affirming dismissal of § 1983 action and noting that "while the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d

A defendant in a civil rights action must have personal involvement in the alleged wrongs.[12] Personal involvement is shown through allegations of personal direction or of actual knowledge and acquiescence of an employee's actions by someone of authority within a corporation.[13] Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.[14] Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff.[15]

An affirmative defense, such as the failure to exhaust administrative remedies, is appropriately considered on a Rule 12(b)(6) motion if it presents an "insuperable barrier to recovery by the plaintiff."[16]

### III.  LEGAL ARGUMENTS

#### A.  Plaintiff Fails To Adequately Amend His Complaint To State A Claim For A Constitutional Violation Against CMS and Dr. Niaz

An act of a prison official in allegedly failing to provide adequate medical care to an inmate becomes a violation of the Eighth only when it results from "deliberate indifference to a prisoner's serious illness or injury."[17] Thus, the seminal case of *Estelle v. Gamble* requires plaintiffs to satisfy a two-prong test in order to impose liability under § 1983:  i) deliberate indifference on the part of prison officials; and ii)  the prisoner's

---

278, 284 (5th Cir. 1993)("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").
[12] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)(citations omitted).
[13] *Id.*
[14] *Id.* (emphasis supplied).
[15] *Smaple v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1989; *see also City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Correctional Institute for Women*, 128 Fed.Appx. 240 (3d Cir. 2005).
[16] *Ray v. Kertes*, 285 F.3d 287, 295 n. 8 (3d Cir. 2002)(quoting *Flight Systems Inc. v. Electric Data Systems Corp*., 112 F.3d 124, 127 (3d Cir. 1997)( "an affirmative defense ... is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff.").
[17] *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

medical needs must be serious.[18]  However, the *Estelle* Court has also clarified the standard in that:

> an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind."  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. [19]

The seriousness of a medical need may be demonstrated by showing that the need is "'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"[20]  The acts complained of must be accompanied by a "reckless disregard" of or "actual intent" to disregard a serious medical condition.[21]  Thus, a defendant's conduct does not constitute a "deliberate indifference" unless it is alleged to occur in conjunction with the requisite mental state.

Plaintiff's allegations, to the extent that they can be construed as being directed against CMS and Dr. Niaz, are, at best, bald assertions and/or legal conclusions.  Plaintiff identifies conditions he has and treatment he has received and then proceeds to assert he has not received the treatment he believes he should have.  He identifies treatment *he believes* he should be receiving, such as interferon, treatment for his lung and a liver transplant; however, he fails to provide any facts which support that he is even a candidate for this treatment.  Lastly, Plaintiff

---

[18] *Id.*
[19] *Id.* at 105-06(citations omitted)(emphasis supplied).
[20] *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)(quoting *Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J. 1979)).
[21] *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).

has not provided any support, in the form of an Affidavit, from any medical professionals that he is a candidate for this treatment.

Plaintiff's argument that he is not receiving treatment is not supported by the evidence. He has received diagnostic exams, including a chest x-ray on September 26, 2005 which revealed a pleural based density in the posterior base. As a result of the findings on the x-ray, on September 27, 2005, a CT was performed on the chest which indicated there were no lung masses or infiltrates. A small left pleural effusion[22] with a potential loculated component was noted. *See* diagnostic reports attached as Exhibit "9". On January 6, 2006, a hard lump was noted on physical exam under the right nipple and a much smaller nodule was noted under the left nipple. *See* January 6, 2006 Interdisciplinary Note attached as Exhibit "6". This was confirmed by ultrasound. A subsequent mammogram was performed at Kent General Hospital which revealed gynecomastia[23], dense fibroglandular tissue in both retroareolar regions. No mammographic evidence for malignancy existed. *See* May 10, 2006 Diagnostic Imaging Department Consultation Report from Kent General Hospital attached as Exhibit "9". Blood work has been performed regularly, including frequent times per month when indicated. Lastly, he underwent a consultation with a surgeon to address his persistent upper quadrant pain

In addition, Plaintiff admits in his Motion to Amend that he has been told that he is not a candidate for interferon. *See* Exhibit "2" at 5. It is not that he is not receiving treatment, but just that he does not agree with the treatment he is receiving and this does not rise to a claim under §1983. Moreover, to state a claim against CMS, a private corporation rather than a person, a discrete standard applies. Notwithstanding this, plaintiff failed to state a claim against CMS or Dr. Niaz.

---

[22] Pleural effusion is the accumulation of excess fluid between the two membranes that envelope the lungs. www.medterms.com/script/main/art.asp?articlekey=4946.
[23] Development of abnormally large mammary glands in males.  http://en.wikipedia.,org/wiki/Gynecomastia.

### 1. CMS cannot be held liable under a theory of *respondeat superior.*

Plaintiff's claims against CMS appear to be grounded solely under a theory of *respondeat superior.* He makes a bald assertion that "FCM and CMS knew all of this and its supervisors promulgation of haphazard ill conceived procedures, misconduct all most killed [him]." *See* Exhibit "2" at 3. However, this is just a legal conclusion and there are no facts to support this conclusion or that CMS has any policies or procedures in effect which denied or delayed treatment to Plaintiff. He has clearly received treatment.

Under *Monell v. Department of Social Services of New York,* a municipality cannot be held liable under a theory of *respondeat superior.*[24] These principles likewise apply to the liability of private corporations offering health care services.[25] CMS cannot be held liable for a constitutional violation as an abstract entity.[26] Since CMS cannot be liable under a theory of *respondeat superior*, CMS is entitled to dismissal of these claims against it.

### 2. Plaintiff fails to assert a policy or custom of deliberate indifference to his serious medical needs.

Plaintiff fails to state a claim against CMS because he fails to allege a policy or custom applied by CMS. He alleges that "… CMS knew all of this and its supervisors promulgation of haphazard ill conceived procedures, misconduct all most killed me." (D.I. 43 at 6). However, this is a bare allegation without any support. Plaintiff does not allege that a CMS official, who has the power to make policy, is responsible for either i) an affirmative proclamation of a policy of deliberate indifference to his serious medical needs, or ii) acquiescence in a well-settled

---

[24] 436 U.S. 658 (1978). *See also Heine v. Receiving Area Personnel*, 711 F.Supp. 178, 185 (D.Del. 1989) ("Traditional concepts of *respondeat superior* do not apply to civil rights actions brought pursuant to 42 U.S.C. § 1983.")

[25] *Miller v. Correctional Medical Systems, Inc.*, 802 F. Supp. 1126, 1132 (citing *Guyer v. Correctional Medical Systems, Inc.*, C. A. No. 86-361-JLL, Magistrate's Report and Recommendation, slip. op. at 3 (D. Del. Apr. 16, 1990)(adopted by final order May 14, 1990)).

[26] *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1063 (3d Cir. 1991).

custom of deliberate indifference to his serious medical needs.  In fact, with the amount of treatment Plaintiff has received, including regular blood work and physical exams, an ultrasound and a mammogram for his chest complaints, CT scans for suspected irregularity in his lungs, EKGs, and treatment at hospitals for his liver failure as a result of ETOH cirrhosis, there is no factual support for a claim that CMS or any individual medical provider has exhibited a deliberate indifference to any of Plaintiff's medical needs or that any policy or procedure exists which has denied or delayed treatment to him.

While a municipality cannot be held liable under a theory of *respondeat superior*, it can be held liable for a policy or custom that demonstrates deliberate indifference.[27]  "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict."[28]  Specifically, municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered."[29]  Second, only those officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability.[30]  Third, whether a particular official has "final policymaking authority" is a question of state law.[31]  Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy.[32]

In *St. Louis v. Praprotnik,* the Supreme Court made it clear that "the authority to make municipal policy is necessarily the authority  to make *final* policy."[33]  There can be no *de facto*

---

[27] *Monell v. Department of Social  Services of New York,* 436 U.S. 658 (1978).
[28] *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)(quoting *Pembaur v City of Cincinnati*, 475 U.S. 469, 481 (1986)).
[29] *Penbaur*, 475 U.S. at 480.
[30] *Id* at 483.
[31] *Id*.
[32] *Id*. at 482-483, and n.12.
[33] 485 U.S. 112, 127 (1987).

final policymaking authority.[34] Moreover, "it is self-evident that official policies can only be adopted by those legally charged with doing so...[the Supreme Court is] aware of nothing in § 1983 or its legislative history…that would support the notion that unauthorized acts of subordinate employees are official policies because they may have the "potential" to become official policies or may be "perceived as" official policies.[35]

Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.[36] A single isolated incident…cannot establish an official policy or practice of the municipality sufficient to render it liable for damages under 1983.[37] In either instance, when a plaintiff alleges as unconstitutional policy or an unconstitutional custom, *a plaintiff must allege that the official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.*[38]

Plaintiff has failed to sufficiently amend his Complaint and it continues to be deficient in that it does not allege *any* policy or custom, let alone any *specific* policy or custom, of CMS constituting deliberate indifference to his serious medical needs, nor has he identified any CMS official who has the power to make such a policy, nor has he articulated any facts that would tend to support a claim of "an official proclamation, policy or edict", nor any "well-settled and permanent course of conduct" by CMS. Plaintiff has received and continues to receive regular and frequent medical treatment for his various medical conditions. Therefore, CMS is entitled to dismissal of this "Amended Complaint" against it.

---

[34] *Id.* at 131. Arguably, under no circumstances could CMS be liable for a unconstitutional "policy".
[35] *Praprotnik*, 485 U.S. at 125.
[36] *Andrews*, 895 F.2d at 1480; *see also Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence.").
[37] *Oklahoma City v. Tuttle*, 471 U.S. 808 (1988).
[38] *Andrews*, 895 F.2d at 1480.

### B. PLAINTIFF'S STATE LAW CLAIMS MUST FAIL

To the extent that Plaintiff's claims fall within the definition of "Medical Negligence" pursuant to 18 *Del. C.* § 6801 (7), expert testimony must be provided to survive a dispositive motion. According to the statute, "'[m]edical negligence' means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider to a patient."[39] Moreover, the plaintiff bears the initial burden of presenting expert medical testimony on both the deviation from the applicable standard of care and causation.[40] As this Court explained in *McCusker*,

> Consistent with the plain language of the [Medical Malpractice] Act, 'the production of expert testimony is an essential element of a plaintiff's medical malpractice case and, as such, is an element on which he [] bears the burden of proof.' Summary judgment is proper when a plaintiff fails to adduce any expert medical testimony in support of his allegations of negligence under the Act.[41]

The Plaintiff has failed to provide any expert testimony on either an alleged deviation in the standard of care or causation. As such, to the extent Plaintiff purports to state a claim for state law medical negligence, those claims must be dismissed.

### C. Plaintiff's Complaint Against CMS Must Be Dismissed Pursuant To Fed. Ct. Civ. R.12 (b)(6) Because The Plaintiff Has Failed To Exhaust Administrative Remedies.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law."[42] "The doctrine provides 'that *no one is entitled to judicial relief* for a supposed or threatened injury *until the prescribed administrative remedy has been exhausted.*'"[43]

---

[39] *Id.*
[40] *McCusker v. Surgical Monitoring Assocs.*, 299 F. Supp. 2d 396, 398 (D.Del. 2004)(citing *Burkhart v. Davies*, 602 A.2d 56 Del. 1991 (further citations omitted).
[41] *Id.* (citation omitted).
[42] *McKart v. United States*, 395 U.S. 185, 193 (1969).
[43] *Id.* (emphasis supplied)(quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)).

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law.[44]. The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[45] "Prison conditions" have been defined to include the nature of the services provided therein.[46] Furthermore, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."[47]

The PLRA mandates that inmates *properly* exhaust administrative remedies before filing suit in federal court.[48] "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."[49] *Prisoners must exhaust administrative remedies before submitting any papers to the federal courts.*[50]

The Delaware Department of Corrections has established administrative procedures that an inmate must follow to file a medical grievance.[51] An inmate must file a grievance with the Inmate Grievance Chairperson ("IGC") who then forwards it to the medical staff for review. If action needs to be taken, the medical staff is required to attempt an informal resolution of the grievance with the inmate. If the grievance cannot be resolved informally, the grievance is forwarded to the Medical Grievance Committee ("MGC") to conduct a hearing. If the decision of the MGC does not satisfy the inmate, the inmate may complete a MGC Appeal Statement

---

[44] *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).
[45] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).
[46] *Booth,* 206 F.3d at 291.
[47] *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).
[48] *Woodford,* 126 S.Ct. at 2387 (emphasis supplied).
[49] *Id.* at 2386.
[50] *Vaden v. Summerhill*, 449 F.3d 1047, 1048, 1051 (9th Cir, 2006); *McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002).
[51] *Frink v. Williams*, 2005 U.S. Dist. LEXIS 21043 (D.Del. 2005).

which is then submitted to the Bureau Grievance Officer ("BGO").[52]  The BGO will recommend a course of action to the Bureau Chief of Prisons, who renders the final decision.[53]

Plaintiff complains of prison conditions, which under 42 U.S.C. §1997e(a) requires him to exhaust the administrative remedies available to him.  Attached as Exhibit "19" are copies of documents regarding Grievances field by Plaintiff.  As will be noted, no appeals were ever taken.  In fact, the treatment requested in the grievance was provided each time.  In Grievance number 6483, Plaintiff requested to see a doctor about his heart.  This grievance was filed on August 30, 2004 and was denied because Plaintiff had seen a cardiologist on November 11, 2004, physicians on December 1, 2004 and February 11, 2005 and was scheduled for a stress test.  An appeal form was provided, but was never returned by Plaintiff and the grievance was closed.

On June 20, 2005, Grievance number 18611 was filed, but it was dismissed by the Inmate Grievance Chairman because it was submitted by an inmate other than Plaintiff on Plaintiff's behalf and this is not permitted.

On February 27, 2006, Plaintiff filed grievance number 24075 seeking medical treatment for his lung.  Plaintiff was scheduled for an appointment with a doctor to address this issue; however, he refused to sign off on the grievance.  Plaintiff appealed and the decision at the grievance hearing was upheld and Plaintiff was to be immediately scheduled for an appointment with chronic care.  As can be seen in the Physician Orders attached as Exhibit "5" and Inter Disciplinary Progress Notes attached as Exhibit "18", Plaintiff was treated on the following dates prior to the filing of his grievance: January 6, 2006 and January 15, 2006.  Following the filing of the grievance, Plaintiff was treated on March 20, 2006, March 24, 2006 (blood was drawn), April 19, 2006 (blood was drawn), May 3, 2006, May 22, 2006 and approximately monthly

---

[52] *Id.*
[53] *Id.*

thereafter. Plaintiff's issues were addressed. No other grievances have been filed as a result of not receiving treatment for his lungs.

On September 5, 2006, Plaintiff filed grievance number 68346 seeking to see a doctor to have his medications renewed and to have blood work done. A hearing was held on October 26, 2006 in which an informal resolution was received and signed off on by Plaintiff whereby Plaintiff was scheduled for a re-evaluation of his medication since the medicine he was previously prescribed was allegedly not working. Plaintiff had been treated on September 13, 2006 and was treated again on November 1, 2006. *See* Exhibit "18".

On December 12, 2006, Plaintiff filed grievance number 88327 seeking a biopsy, shots and medications. The grievance was upheld and Plaintiff was treated by Dr. McDonald on December 27, 2006. An appeal form was supplied to Plaintiff, but not returned.

On January 10, 2007, Plaintiff filed grievance 102364; however, this was rejected because it did not conform with internal grievance procedures since Plaintiff did not set forth a medical complaint in the grievance.

Plaintiff filed grievances even though he was receiving treatment. Notwithstanding this, his grievances were addressed and he received treatment subsequent to the grievances to address his issues. In fact, with regard to the one grievance he did appeal, 24075, he had been receiving treatment both before and after it was filed on February 27, 2006. In fact it is questionable why Plaintiff appealed since the Grievance Board and Bureau Chief found in his favor. In addition, Plaintiff received treatment and there were no subsequent complaint that he did not receive the treatment he requested. In fact, a review of the medical records shows he received regular treatment both before and after the February 27, 2006 grievance.

Therefore, there are no outstanding grievances for which Plaintiff did not receive treatment. All of Plaintiff's Grievances were either not appealed or addressed with appropriate and timely medical care. Wherefore, none of Plaintiff's Grievances were *properly* appealed and Plaintiff's Amended Complaint should be dismissed for properly failing to exhaust all administrative remedies.

## IV.   CONCLUSION

Based upon the foregoing, all claims against Defendants, Correctional Medical Services and Dr. Niaz, should be dismissed pursuant to Federal Rule of Civil Procedure 12 (b)(6) for failure to state any claim upon which relief can be granted. Accordingly, Defendants, Correctional Medical Services, Inc. and Dr. Niaz, respectfully request the Motion to Dismiss filed contemporaneously herewith be granted with prejudice.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY:   */s/ Eric Scott Thompson*
          KEVIN J. CONNORS, ESQ.
          DE Bar ID: 2135
          ERIC SCOTT THOMPSON, ESQ.
          DE Bar ID: 4633
          1220 North Market Street, 5th Fl.
          P.O. Box 8888
          Wilmington, DE 19899-8888
          Attorneys for Defendants, Correctional Medical
          Services, Inc. and Dr. Niaz

DATED: June 10, 2008

15/625296.v1

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served upon all counsel of record a correct copy of the *MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF DEFENDANTS, CORRECTIONAL MEDICAL SERVICES AND DR. NIAZ, TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, INCORRECTLY DESIGNATED AS "MOTION TO AMEND"* in the above-captioned matter this date by electronic service through CM/ECF or First-Class U.S. Mail.

          MARSHALL, DENNEHEY, WARNER,
          COLEMAN & GOGGIN
          BY:   */s/ Eric Scott Thompson*
                KEVIN J. CONNORS, ESQ.
                DE Bar ID: 2135
                ERIC SCOTT THOMPSON, ESQ.
                DE Bar ID: 4633
                1220 North Market Street, 5th Fl.
                P.O. Box 8888
                Wilmington, DE 19899-8888
                Attorneys for Defendants, Correctional Medical
                Services, Inc. and Dr. Niaz

DATED: June 10, 2008

15/625296.v1