IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL LEE ROSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C. A. No. 06-370-JJF |
| v. | ) |
| | ) TRIAL BY JURY |
| FIRST CORRECTIONAL MEDICAL, | ) OF TWELVE DEMANDED |
| CORRECTIONAL MEDICAL SERVICES, | ) |
| INC., and DR. NIAZ, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF MICHAEL LEE ROSE'S MOTION TO PERMIT LIMITED
DISCOVERY WITHOUT A RULE 26(f) CONFERENCE AND
FOR EXTENSION OF TIME TO RESPOND TO DEFENDANTS CORRECTIONAL
MEDICAL SERVICES, INC. AND DR. NIAZ'S MOTION TO DISMISS**

Plaintiff Michael Lee Rose ("Mr. Rose" or "Plaintiff"), by and through his counsel, respectfully moves this Court for an order permitting limited discovery without a conference required by Rule 26(f) of the Federal Rules of Civil Procedure and for an extension of time pending the completion of discovery for Mr. Rose to respond to defendants Correctional Medical Services, Inc. ("CMS") and Dr. Muhammed A. Niaz's ("Dr. Niaz") (collectively "Defendants") motion to dismiss (the "Motion"). The present motion should be granted for the foregoing reasons:

**Background**

1.     Plaintiff Michael Lee Rose is incarcerated at the Delaware Correctional Center in Smyrna, Delaware. He has hepatitis C.

2.      On or about May 30, 2006, Mr. Rose filed a *pro se* complaint[1] against several defendants, including First Correctional Medical, CMS and Dr. Niaz, alleging that as early as November 2001, defendant FCM knew he had hepatitis C and needed medical care, but refused to provide medical care to him.[2]  The complaint alleged that he asked "every doctor in [FCM]," and when he "came to DCC in 2004 and ask [sic] every doctor for help," and they refused.[3] Plaintiff's complaint also alleged that Dr. Niaz told him he had six months to live, but he was refused treatment by Dr. Niaz and CMS.[4]

3.      Defendant CMS moved to dismiss his complaint on or about October 31, 2006,[5] Dr. Niaz moved to dismiss the complaint on or about November 7, 2006[6] and FCM moved to dismiss the complaint on or about December 1, 2006.[7]  On September 28, 2007, the Court granted in part and denied in part defendants FCM, CMS and Dr. Niaz's motions to dismiss and allowed Mr. Rose to amend his complaint.[8]

4.      Mr. Rose's amended complaint was mailed on or about October 26, 2007 and docketed by the Court on October 29, 2007.[9]  On June 6, 2008, this Court entered a judgment in favor of Mr. Rose and against defendant FCM.[10]  Defendants CMS and Dr. Niaz filed a motion to dismiss Mr. Rose's amended complaint on or about June 10, 2008 attaching exhibits, most of which were medical records.[11]

---

[1] D.I. 2; *see* D.I. 34 at 3 (noting that the complaint was signed on May 30, 2006 and "[p]ursuant to the 'mailbox rule' the Complaint is filed on the date it is delivered to prison officials for mailing, not the date it is marked filed").

[2] D.I. 2; *see* D.I. 34 at 1.

[3] D.I. 34 at 1.

[4] *Id.*

[5] D.I. 18.

[6] D.I. 21.

[7] D.I. 27.

[8] D.I. 34.

[9] D.I. 43 (document captioned Motion to Amend).

[10] D.I. 64.

[11] D.I. 61- D.I. 63.

5.      Counsel was appointed to represent Mr. Rose on or about June 16, 2008.[12]  On June 27, 2008, eleven (11) days later, the parties stipulated to a 10-day extension for Mr. Rose to respond to the pending motion to dismiss.[13]  Upon review of the record and after gaining an appreciation of the enormous task of reviewing, understanding and discovering facts relating to the largely-illegible medical records included in the voluminous exhibits submitted in support of Defendants' motion to dismiss,[14] Mr. Rose's new counsel sought an extension of three months but only received an extension until September 2, 2008 to respond to Defendants' motion to dismiss.[15]

6.      On July 24, 2008, Plaintiff's counsel proposed to Defendants' counsel a meet and confer as required by Rule 26(f) of the Federal Rules of Civil Procedure so that Plaintiff could serve discovery and obtain information and documents necessary to respond to Defendants' motion to dismiss.  Defendants' counsel declined to participate in a meet and confer on the grounds that their motion to dismiss was pending, but agreed to give Mr. Rose's counsel the documents received in response to the subpoena served on Department of Correction, Delaware Correctional Center on or about May, 28, 2008 and Mr. Rose's medical records.

7.      After not receiving the records from Defendants' counsel, Mr. Rose's counsel again requested a meet and confer and the records that Defendants' counsel said were forthcoming during their July 24, 2008 teleconference.[16]  Mr. Rose's counsel also outlined the discovery Mr. Rose sought in order to respond to Defendants' motion to dismiss.[17]

---

[12] D.I. 65.

[13] D.I. 66.  The Court granted this Order on July 2, 2008.

[14] D.I. 63.

[15] D.I. 67.  The Court granted this Order on July 11, 2008.

[16] *See* August 6, 2008 Letter from Laina M. Herbert to Eric Scott Thompson attached hereto as Exhibit A.

[17] *Id.*

8.    On August 7, 2008, Defendants' counsel sent Mr. Rose's counsel his medical records, but did not respond to the issues raised in his counsel's August 6 letter. On August 11, 2008, Defendants' counsel confirmed that the exhibits filed with Defendants' motion to dismiss[18] and the records provided to counsel on August 7 were all of the records in Defendants' possession regarding the medical treatment received by Mr. Rose, including any documents subpoenaed from the State of Delaware.[19]

9.    A review of the records submitted with CMS and Dr. Niaz's motion to dismiss and Mr. Rose's medical records leaves several questions unanswered and further highlights the need for discovery. Furthermore, many of the records are illegible prompting the need to depose a 30(b)(6) witness or witnesses designated by CMS.

**Argument**

10.    In this case plaintiff, an incarcerated individual, filed a *pro se* complaint alleging the failure of Defendants to provide adequate medical care and he has no information to evaluate his claims and respond to the voluminous factual record introduced by Defendants with their motion to dismiss other than his personal experiences and observations, the information attached to Defendants' motion to dismiss and the medical records provided by Defendants in response to counsel's informal request.

11.    Plaintiff has a dire need for basic discovery. Mr. Rose claims he is constitutionally entitled to medical treatment for his serious medical needs and his complaint asserts that Defendants were deliberately indifferent to such needs. He is seeking ongoing relief in the form of treatment for his serious medical needs, including hepatitis C.

---

[18] D.I. 63.

[19] *See* Exhibit B.

12.     After surviving one motion to dismiss and being given leave to amend, Mr. Rose now faces another motion to dismiss that again asserts he failed to state a claim and throws into the record facts that Mr. Rose has not had the opportunity to test. Seriatim motions to dismiss are obstructionist and delay resolution of this case on its merits. Delaware law has a strong preference for deciding cases on the merits.[20]

13.     Although Defendants refuse to participate in a Rule 26(f) conference while their motion to dismiss is pending, discovery is not automatically stayed while a motion to dismiss is pending.[21] Defendants have not moved for a stay of discovery and the Court has not entered a stay of discovery in this case.

14.     Rule 26(d) requires the parties to confer as required by Rule 26(f) before discovery can proceed.[22] Defendants cannot automatically self-impose a stay of discovery while their motion to dismiss is pending. Defendants, however, have in effect granted themselves a stay of discovery by refusing to participate in a meet and confer with Mr. Rose's counsel. This Court has the authority to allow discovery to proceed[23] and it should exercise its authority in this case.

15.     When an act must be done within a specified time, the Court may, for good cause, extend the time for acting if a request is made before the original time, or its extension, has expired.[24]

---

[20] *Franklin Balance Sheet Investment Fund v. Crowley*, 2006 Del. Ch. LEXIS 188, at *17 (Del. Ch.) (Exhibit C hereto).
[21] *Kahn v. Tremont Corp.*, 1992 WL 205637, at *2 (Del. Ch.)(noting no hard and fast rule that affords defendants a right to a stay simply because a motion to dismiss has been filed) (Exhibit D hereto).
[22] Fed. R. Civ. P. R. 26(d)(1).
[23] *Id.*; *Fish Engineering Corp. v. Hutchinson*, 162 A.2d 722, 725 (Del. 1960)(recognizing the Court has broad discretion in determining whether to allow discovery to proceed and that "discovery should be allowed unless the Court is satisfied that the administration of justice will be impeded by such an allowance").
[24] *See, e.g.*, Fed. R. Civ. P. R. 6(b)(1)(A).

16.      Here, Mr. Rose requests that this Court exercise its discretion and enter an order permitting limited discovery without a Rule 26(f) conference and grant him a reasonable extension of time such that he can serve, receive and analyze responses to basic discovery requests and appropriately respond to Defendants' motion to dismiss. If granted, this extension of time will not disrupt the schedule in this case since there is no Scheduling Order in place at this time. In addition, Mr. Rose has already prepared his formal discovery requests, provided the substance of these requests to Defendants' counsel in an August 6 letter,[25] and such requests can be served immediately upon the Court granting this Motion.

17.      For the reasons set forth above, Mr. Rose respectfully requests that his Motion be granted, that this Court permit limited discovery without a Rule 26(f) conference, and that the date on which he must respond to the Defendants' motion to dismiss be extended for a reasonable time pending the completion of discovery during which time the Plaintiff shall serve and Defendants shall respond to Mr. Rose's discovery requests, including a 30(b)(6) deposition by a witness or witnesses designated by CMS, thereby providing Mr. Rose with necessary information and allowing Mr. Rose and his counsel adequate time to prepare a response to Defendants' motion to dismiss.

## STATEMENT PURSUANT TO LOCAL RULE 7.1.1

18.      Pursuant to Local Rule 7.1.1 of the Local Rules of the United States District Court for the District of Delaware, the undersigned hereby certifies that counsel contacted Defendants' counsel in an effort to reach agreement on the matters contained in Plaintiff Michael Lee Rose's Motion to Permit Limited Discovery Without a Rule 26(f) Conference and for Extension of Time

---

[25] *See* Exhibit A.

to Respond to Defendants Correctional Medical Services, Inc. and Dr. Niaz's Motion to Dismiss.

Counsel were unable to reach an agreement.[26]

PRICKETT, JONES & ELLIOTT, P.A.

By: *Laina M. Herbert*
      Laina M. Herbert (DE Bar #4717)
      1310 King Street
      P.O. Box 1328
      Wilmington, DE  19899-1328
      (302) 888-6500
      LMHerbert@prickett.com

DATED:  August 11, 2008       *Attorney for Plaintiff Michael Lee Rose*

---

[26] *See* Exhibit B hereto.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MICHAEL LEE ROSE,                          )
                                           )
            Plaintiff,                     )
                                           )    C. A. No. 06-370-JJF
     v.                                    )
                                           )    TRIAL BY JURY
FIRST CORRECTIONAL MEDICAL,                )    OF TWELVE DEMANDED
CORRECTIONAL MEDICAL SERVICES,             )
INC., and DR. NIAZ,                        )
                                           )
            Defendants.                    )

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Plaintiff, Michael Lee Rose's Motion to Permit Limited

Discovery Without a Rule 26(f) Conference and for Extension of Time to Respond to Defendants

Correctional Medical Services, Inc. and Dr. Niaz's Motion to Dismiss will be presented to The

Honorable Joseph J. Farnan, Jr. on Friday, September 12, 2008, at 2:00 p.m.


                              PRICKETT, JONES & ELLIOTT, P.A.


                              By: *Laina M. Herbert*
                                  Laina M. Herbert (DE Bar #4717)
                                  1310 King Street
                                  P.O. Box 1328
                                  Wilmington, DE  19899-1328
                                  (302) 888-6500
                                  LMHerbert@prickett.com

DATED:  August 11, 2008        *Attorney for Plaintiff Michael Lee Rose*

EXHIBIT A

Writer's Direct Dial:
(302)888-6547
Writer's Telecopy Number:
(302)658-8111
Writer's E-Mail Address:
LMHERBERT@prickett.com

### PRICKETT, JONES & ELLIOTT
A PROFESSIONAL ASSOCIATION
**1310 KING STREET, BOX 1328**
**WILMINGTON, DELAWARE 19899**
TEL: (302) 888-6500
FAX: (302) 658-8111
http://www.prickett.com

Dover Office:
11 NORTH STATE STREET
DOVER, DELAWARE 19901
TEL: (302) 674-3841
FAX: (302) 674-5864

August 6, 2008

**Via E-mail and First Class Mail**

Eric Scott Thompson, Esquire
Marshall, Dennehey, Warner,
    Coleman and Goggin
1220 N. Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899-8888

        Re:    **Rose v. First Correctional Medical, et al.**
             **C. A. # 06-370-JJF**

Dear Eric:

      I write following our conversation on July 24, 2008 during which I proposed a Rule 26 meet and confer so that I could obtain basic discovery necessary to respond to your clients' motion to dismiss. It is my understanding that you declined to participate in a meet and confer on the grounds that it was inappropriate for discovery to move forward while a motion to dismiss was pending. During this conversation, I expressed my concerns about Mr. Rose's lack of access to the information that you have obtained in response to your subpoena to the Department of Correction, Delaware Correctional Center served on or about May 28, 2008 (the "subpoena") and to Mr. Rose's medical records. I also mentioned other areas of discovery necessary to respond to your clients' motion to dismiss, and suggested that Mr. Rose could not respond appropriately by the September 2 deadline without this information. You agreed to send me copies of the documents you received in response to the subpoena and Mr. Rose's medical records. It has now been more than a week and I have not received these documents.

      In addition to the documents you agreed to provide, I also seek answers to the following interrogatories and requests for admission and the production of the documents described below.

**Interrogatories:**

      1.    Identify all medical records relating to plaintiff Michael Lee Rose that you did not attach as exhibits to the Motion of Defendants, Correctional Medical Services, Inc. and Dr. Niaz, to Dismiss Plaintiff's Amended Complaint, Incorrectly Designated as "Motion to Amend," filed on June 10, 2008 (D.I. 63) ("motion to dismiss") and explain why you did not attach such records as exhibits to your motion to dismiss.

20519.1\376286v3

Eric Scott Thompson, Esquire
August 6, 2008
Page 2

2.    Identify all of Dr. Niaz's employers from 2001 to present, including the dates of employment with each employer.

3.    Identify the location where all DCC inmate medical records are kept and describe the type of files that are kept on each inmate.

4.    Identify all documents that contain or refer to policies, rules, regulations or guidelines of DCC and/or CMS in effect on January 1, 2001, or put in effect any time since then, which govern or relate to the medical treatment of inmates at DCC, persons in the custody of the DCC, or persons under the care of CMS at the DCC.

5.    Identify all statements of witnesses that were taken in connection with the DCC's or CMS's medical treatment of Mr. Rose, which gave rise to this lawsuit and any defenses defendants will raise, including the name and position of the persons giving and taking the statement.

6.    State the nature of any internal or departmental investigations or other proceedings held in connection with the DCC's or CMS's treatment of Mr. Rose's medical conditions, including but not limited to hepatitis C, diabetes, cirrhosis of the liver, liver failure, liver disease or renal failure which gave rise to this lawsuit and any defenses defendants will raise, and identify the individuals who were involved in the investigation and documents referring to or relating to the investigation.

7.    Identify all policies and procedures of CMS and/or DCC relating to patients with hepatitis C, diabetes, cirrhosis of the liver, liver failure, liver disease or renal failure.

8.    Identify all policies and procedures of CMS or DCC relating to the chronic care clinic.

9.    Identify all CMS health care personnel who examined, diagnosed or treated Mr. Rose at the DCC from 2001 to present.

10.    Identify every person known to you or your attorneys who has any knowledge regarding the facts and circumstances surrounding the examination, diagnosis and/or treatment of Mr. Rose, which gave rise to this lawsuit and any defenses defendants will assert, including eyewitnesses and medical witnesses. With respect to each such person, identify the fact or facts which the witness knows and the source of his or her knowledge.

11.    Identify all insurance policies and/or any other insurance coverage that may be applicable to any of the claims of Plaintiff, whether such coverage is designated as primary coverage, secondary coverage, excess coverage, reinsurance or by any other term or definition.

Eric Scott Thompson, Esquire
August 6, 2008
Page 3

12.    If any of your responses to Plaintiff's Second Set of Requests for Admissions ("RFA") are anything other than an unqualified admission, then for each such RFA:  (a) identify the RFA by number and describe all facts upon which you base your denial of the RFA or any portion thereof; (b) identify each document establishing the facts upon which you base your denial; and (c) identify all persons with knowledge of the denial of the RFA or any person thereof.

**Document Requests:**

1.    All documents identified in or referred to in Defendants Responses to Plaintiff's Second Set of Interrogatories to Defendants and Second Set of Requests for Admissions to Defendants.

2.    All medical records, including chronic care clinic records, relating to Plaintiff Michael Lee Rose that were not attached as exhibits to the Motion of Defendants, Correctional Medical Services, Inc. and Dr. Niaz to Dismiss Plaintiff's Amended Complaint, Incorrectly Designated as "Motion to Amend," filed on June 10, 2008 (D.I. 63).

3.    All CMS policies, manuals, rules or regulations related to the chronic care clinic.

4.    All Department of Corrections or DCC policies, manuals, rules or regulations related to the chronic care clinic.

5.    All policies, manuals, rules or regulations related to CMS's care for and/or treatment of patients with (a) hepatitis C, (b) diabetes, (c) cirrhosis of the liver, (d) liver failure, (e) liver disease, or (f) renal failure.

6.    All policies, manuals, rules or regulations related to the Department of Corrections or DCC's care for and/or treatment of patients with (a) hepatitis C, (b) diabetes, (c) cirrhosis of the liver, (d) liver failure, (e) liver disease, or (f) renal failure.

In addition, I seek certain admissions regarding (1) the identity of Dr. Niaz's employer for years 2001 to present and (2) whether the documents attached to CMS and Dr. Niaz's motion to dismiss (filed with the Court as D.I. 63) were all of Delaware Correctional Center and CMS's medical records pertaining to Mr. Rose, including all chronic care records.  Finally, I seek a 30(b)(6) deposition of witness(es) designated by CMS as the person(s) most competent to testify on its behalf concerning:

1.    The type of medical records kept on persons incarcerated at the DCC.

2.    The location where medical records of persons incarcerated at the DCC are kept or stored.

20519.1\376286v3

Eric Scott Thompson, Esquire
August 6, 2008
Page 4

---

    3.     The medical records of Michael Lee Rose.

    4.     The medical treatment of Michael Lee Rose by CMS.

    5.     The chronic care clinic at the DCC.

    6.     The type of records generated by the chronic care clinic at the DCC.

    7.     Dr. Niaz's employment with CMS.

By Friday, August 8, 2008, please confirm that my understanding of our conversation is correct, i.e., that you will not agree to a meet and confer while the motion to dismiss is pending and that you will provide me copies of the documents you received in response to the subpoena and Mr. Rose's medical records, and forward these documents to me by this date. If I do not hear from you by this date, I will seek relief from the Court.

Sincerely,

*Laina M. Herbert*

Laina M. Herbert

LMH:ljc

20519.1\376286v3

**EXHIBIT B**

## Herbert, Laina M.

**From:**    Thompson, Eric S. [ESThompson@MDWCG.com]
**Sent:**    Monday, August 11, 2008 3:40 PM
**To:**    Herbert, Laina M.
**Subject:** RE: Rose v. First Correctional Medical et al.

Laina:

   Between the Motion to Dismiss and the medical records you received, you are in possession of all documents in our possession regarding medical treatment received by Plaintiff including any documents subpoenaed from the State of Delaware. With regard to the Interrogatories you forwarded in your letter dated August 6, 2008, it is premature to enter into discovery with a Motion to Dismiss pending before the Court. With regard to requesting an additional extension of time to Respond to my client's Motion to Dismiss, two extensions of time have been previously provided. Therefore, any request made to the Court for additional time will be opposed.

   Very truly yours,

---

**Eric S. Thompson, Esq.**
*Attorney at Law*

1220 N. Market St., 5th Floor
P.O. Box 8888
Wilmington, DE 19899
P: (302) 552-4370
F: (302) 651-7905

- ■ website
- ■ e-mail
- ■ bio

---

This e-mail transmission and any documents, files or previous e-mail messages attached to it, are confidential and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify me by forwarding this e-mail to ESThompson@MDWCG.com , or by telephone at (302) 552-4370 and then delete the message and its attachments from your computer.

---

**From:** Herbert, Laina M. [mailto:LMHerbert@Prickett.com]
**Sent:** Monday, August 11, 2008 1:05 PM
**To:** Thompson, Eric S.
**Subject:** Rose v. First Correctional Medical et al.

Eric,

Thank you for sending me a copy of Mr. Rose's medical records on August 7. I am still unclear as to whether you attached as exhibits to your motion to dismiss all of the documents you received in response to your subpoena to the Delaware Correctional Center or if you received additional documents that were not filed as D.I. 63.

Other than receiving the medical records from you, I have not received a response to my August 6, 2008 letter. If your clients are still unwilling to hold a meet and confer so that I can serve the limited discovery outlined in the August 6 letter, I have no choice but to file a motion asking the Court to (1) waive the requirement of a Rule 26(f) conference, (2) allow discovery to proceed and (3) extend the time for Mr. Rose to respond to your clients' motion to dismiss until after he receives and reviews responses to his discovery requests and takes a 30(b)(6) deposition of a CMS witness or witnesses.

In an effort to comply with Local Rule 7.1.1, I send you this email seeking your agreement to (1) respond to formal discovery requests similar to the ones outlined in my August 6 letter and agree to a deposition of a 30(b)(6) witness(es) of

CMS and (2) an extension of time for Mr. Rose to response to your clients' motion to dismiss until discovery is complete. As I mentioned last time we spoke, I am interested in holding a Rule 26(f) meet and confer.

Please let me know by close of business today if your clients will agree.

Thank you,
Laina Herbert

_____

Laina M. Herbert
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE 19801
Phone: (302) 888-6547
Fax: (302) 658-8111
Email: *Lmherbert@prickett.com*

This e-mail and any attachments thereto are intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, any dissemination, distribution or copying of this e-mail and attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by e-mail or telephone and permanently delete all copies of this e-mail.

To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**EXHIBIT C**

2006 Del. Ch. LEXIS 188, *

Caution
As of: Aug 11, 2008

**Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund, Oppenheimer Investment Partnership LP and Oppenheimer Close International Ltd., Wynnefield Partners Smallcap Value LP I, Wynnefield Partners Smallcap Value LP, Wynnefield Smallcap Value Off-Shore Fund LPD and Channell Partnership II, LP, Individually, derivatively and on behalf of a Class of similarly situated stockholders, Plaintiffs, v. Thomas G. Crowley, Jr., Molly M. Crowley, Phillip E. Bowles, Gary L. Depolo, Earl T. Kivett, William A. Pennella, Leland S. Prussia, Cameron W. Wolfe, Jr., Defendants, v. Crowley Maritime Corporation, Nominal Derivative, Defendant.**

**Civil Action No. 888-N**

**COURT OF CHANCERY OF DELAWARE, NEW CASTLE**

*2006 Del. Ch. LEXIS 188*

**June 9, 2006, Submitted
October 19, 2006, Decided**

**NOTICE:**

[*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**SUBSEQUENT HISTORY:** Costs and fees proceeding at, Motion granted by, in part, Motion denied by, in part *Franklin Balance Sheet Inv. Fund v. Crowley, 2007 Del. Ch. LEXIS 133 (Del. Ch., Aug. 30, 2007)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff shareholders filed derivative and direct claims against defendants, the corporation and its principal, for breach of fiduciary duty, entrenchment, and self-dealing. The corporations and its principal filed a motion to dismiss. The shareholders filed a responsive brief, and subsequently moved to amend their complaint in lieu of filing a responsive supplemental brief. Intervenor shareholder moved to intervene as an additional plaintiff.

**OVERVIEW:** The shareholders and the shareholder sought to challenge two life insurance agreements and a later settlement agreement into which the corporation and its principal entered. When the corporation and its principal filed a motion to dismiss and an opening brief, the shareholders filed an answering brief. Thereafter, the corporation and its principal raised new arguments in their reply brief, at argument, and in a supplemental brief. The shareholders then sought to amend their complaint. The court found that the shareholders did not have sufficient notice of the full scope of the motion to dismiss when they filed their answering brief, particularly as to a standing argument. Thus, Del. Ch. Ct. R. 15(aaa) did not preclude them from amending their complaint. Although the proposed amendments addressed more than the standing defense, the court allowed the motion to amend in its entirety. However, the court exercised its discretion under Rule 15(aaa) and ordered the shareholders to reimburse the corporation and its principal for attorneys' fees and costs. The court additionally, found that the shareholder could intervene under Del. Ch. Ct. R. 24 as his claims were not time-barred or moot.

**OUTCOME:** The court granted the shareholders' motion for leave to amend and the shareholder's motion to intervene. The court further ordered the shareholders to reimburse the corporation and its principal, at least in part, for the reasonable attorneys' fees and costs which they incurred in connection with their motion to dismiss after the filing of the shareholders' answering brief.

**CORE TERMS:** amend, answering, reply brief, intervene, opening brief, settlement, laches, stockholder, statutes of limitations, supplemental brief, briefing, notice, premium, futile, moot, leave to amend, standing issue, supplemental briefing, derivative, stock, premium payments, good cause, attorneys' fees, self-dealing, ownership, mootness, insurance policies, policies covered, split-dollar, shareholder

**LexisNexis(R) Headnotes**

2006 Del. Ch. LEXIS 188, *

**Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court**
[HN1] See Del. Ch. Ct. R. 15(aaa).

**Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court**
[HN2] Del. Ch. Ct. R. 15(a) allows a party to amend it's pleading once as a matter of right at any time before a responsive pleading is served. Thereafter, a party may amend its pleading only with leave of the court. Leave is generally liberally granted unless there is a showing of substantial prejudice or legal insufficiency. Notwithstanding Del. Ch. Ct. R. 15(a), Del. Ch. Ct. R. 15(aaa) limits the parties' ability to replead. The purpose of the rule is to minimize situations where a court must adjudicate multiple motions to dismiss in the same action. When confronted with a motion to dismiss under Del. Ch. Ct. R. 12(b)(6) or Del. Ch. Ct. R. 23.1, Del. Ch. Ct. R. 15(aaa) requires plaintiffs to choose between standing on their complaint and answering the motion or amending (or seeking leave to amend) before the response to the motion is due.

**Civil Procedure > Parties > Intervention > Motions to Intervene**
**Civil Procedure > Parties > Intervention > Permissive Interventions**
**Civil Procedure > Parties > Intervention > Right to Intervene**
[HN3] Del. Ch. Ct. R. 24(a) and 24(b) address intervention of right and permissive intervention.

**Civil Procedure > Parties > Intervention > Motions to Intervene**
**Civil Procedure > Parties > Intervention > Permissive Interventions**
**Civil Procedure > Parties > Intervention > Right to Intervene**
[HN4] See Del. Ch. Ct. R. 24.

**Civil Procedure > Parties > Intervention > Motions to Intervene**
[HN5] Although the Delaware courts embrace a liberal policy of allowing intervention, mere incantations of equitable principles will not stave off denial of a motion to intervene if the intervenor lacks standing to bring the claim or otherwise makes a claim that is inherently flawed as a matter of law. A claim is inherently flawed or futile if it would not survive a motion to dismiss under either Del. Ch. Ct. R. 23.1 or Del. Ch. Ct. R. 12(b)(6).

**Civil Procedure > Pleading & Practice > Motion Practice > Supporting Memoranda**
[HN6] Under the Delaware briefing rules, a party is obliged in its motion and opening brief to set forth all of the grounds, authorities, and arguments supporting its motion. Del. Ch. Ct. R. 7(b) and 171. A movant should not hold matters in reserve for reply briefs. Instead, reply briefs should consist of material necessary to respond to the answering brief.

**Civil Procedure > Pretrial Matters > General Overview**
[HN7] Delaware law has a strong preference for deciding cases on the merits, rather than on procedural grounds.

**Business & Corporate Law > Corporations > Shareholders > Actions Against Corporations > Derivative Actions > Procedures**
**Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements**
[HN8] See Del. Code Ann. tit. 8, § 327.

**Civil Procedure > Equity > General Overview**
**Governments > Courts > Authority to Adjudicate**
**Governments > Legislation > Statutes of Limitations > General Overview**
**Governments > Legislation > Statutes of Limitations > Equitable Estoppel**
**Governments > Legislation > Statutes of Limitations > Tolling**
[HN9] In general, as a court of equity, the Court of Chancery of Delaware does not strictly apply statutes of limitations. Instead the court applies the doctrine of laches and uses analogous statutes of limitations as a presumptive time period for application of laches to bar a claim. The court also avoids inflexible or arbitrary application of a statute of limitations. Thus, under the doctrine of equitable tolling, the statute does not run against a plaintiff until he or she had reason to know the facts alleged to give rise to the wrong.

**Business & Corporate Law > Corporations > Shareholders > Actions Against Corporations > Derivative Actions > Procedures**
**Governments > Legislation > Statutes of Limitations > Equitable Estoppel**
**Governments > Legislation > Statutes of Limitations > Tolling**
**Torts > Procedure > Statutes of Limitations > Accrual of Actions > Occurrence of Tort**

*Torts > Procedure > Statutes of Limitations > Tolling > General Overview*

[HN10] A cause of action accrues at the moment of a wrongful act, even if the plaintiff is ignorant of the wrong. The limitations period will be tolled, however, until such time that persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, if pursued, would lead to the discovery of the injury. In situations where the challenged derivative action is a failure to disclose actionable self-dealing, laches does not begin to run until the shareholder knew or should have known of the facts alleging the wrong.

*Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Causes of Action > General Overview*
*Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Fiduciary Responsibilities > General Overview*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview*
*Torts > Procedure > Statutes of Limitations > General Overview*

[HN11] The statute of limitations for a breach of fiduciary duty is three years. *Del. Code Ann. tit. 10, § 8106.*

*Civil Procedure > Justiciability > Mootness > Real Controversy Requirement*

[HN12] The primary function of a court is to adjudicate actual controversies. In the absence of a controversy, a case will be dismissed because a court cannot grant relief in the matter. A matter may become moot if the legal issue in dispute ceases to be amenable to judicial resolution or if a claimant has been divested of standing.

**COUNSEL:** R. Bruce McNew, Esquire, TAYLOR & McNEW, LLP, Wilmington, Delaware, Attorney for Plaintiff.

Jon E. Abramczyk, Esquire, Eric Wilensky, Esquire, Lisa Whittaker, Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Michael D. Torpey, Esquire, James N. Kramer, Esquire, Erin L. Bansal, Esquire, ORRICK, HERRINGTON & SUTCLIFFE LLP, San Francisco, California, Attorneys for Defendants.

**OPINION BY:** Parsons

**OPINION**

**MEMORANDUM OPINION**

**PARSONS, Vice Chancellor.**

Pending before the Court is Plaintiffs' motion for leave to amend their complaint and John H. Norberg, Jr.'s ("Norberg") motion to intervene as an additional shareholder plaintiff. The current Plaintiffs are Franklin Balance Sheet Investment Fund and Franklin Microcap Value Fund, P. Oppenheimer Investment Partnership LP and Oppenheimer Close International Ltd., Wynnefield Partners Smallcap Value LP I, Wynnefield Partners Smallcap LP, Wynnefield Smallcap Value Off-Shore Fund Ltd. and Channell Partnership II, LP. For the reasons stated below, Plaintiffs' motion to amend and Norberg's motion to intervene are granted.

[*2] **I. BACKGROUND**

**A. Facts**

Collectively, Plaintiffs own approximately 30% of the common shares of Crowley Maritime Corporation ("Crowley" or the "Company") not owned by the Crowley family. [1] Norberg beneficially owns nine shares of Crowley and claims to have continuously held those shares since 1991. [2]

> 1  Proposed Amended Class Action and Derivative Compl. ("Proposed Compl.") P 8, attached to Plaintiffs' Mot. For Leave to Amend as Ex. A.
> 2  *Id.* at P 7.

Crowley is a Delaware Corporation with its principal executive office in Oakland, California. [3] It provides diversified transportation services in domestic and international markets by means of four operating lines of business: Liner Services, Logistics, Marine Services and Petroleum Services. The company supports its business segments by providing corporate services (such as purchasing, human resources, information technology, public relations and advertising) and by providing vessel construction/architecture technical services, [*3] which involve supervising construction of new vessels and maintaining ownership of vessels that are chartered for use in Crowley's operating lines of business. [4] Defendant Thomas B. Crowley, Jr. ("Mr. Crowley") is Chairman, President and Chief Executive Officer of the Company and has been a director since 1994. [5] He beneficially owns or controls approximately 65% of the voting stock of the Company. [6]

> 3  *Id.* at P 9.
> 4  *Id.* at P 38.
> 5  *Id.* at P 10.
> 6  *Id.*

2006 Del. Ch. LEXIS 188, *

Plaintiffs allege that on April 6, 1992, the Company and Mr. Crowley entered into the first of two split-dollar life insurance agreements (the "1992 Agreement"). [7] The 1992 Agreement relates to five life insurance policies with a total face amount of $ 50 million on the life of the survivor of Mr. Crowley's father, Thomas B. Crowley, or his step-mother, Molly Crowley. Under the terms of the 1992 Agreement, Mr. Crowley owned the underlying policies and the Company was obligated to pay the premiums on them. [8] [*4]

> 7  Proposed Compl. P 73; *see also* Ex. 10.6 to Crowley's April 1 Form 10-12G, *available at* www.sec.gov/edgar.
> 8  *Id.*

On July 20, 1998, the Company and Mr. Crowley entered into a second split-dollar life insurance agreement (the "1998 Agreement"). [9] The 1998 Agreement relates to six life insurance policies with a total face amount of $ 50 million on the life of Molly Crowley. Similar to the 1992 Agreement, Mr. Crowley was the sole owner of the policies covered by the 1998 Agreement; the policies were pledged to the Company to secure Mr. Crowley's obligation to repay the Company for the premiums, upon termination of the 1998 Agreement or payment of a death benefit. [10]

> 9  Proposed Compl. PP 78, 79; *see also* Ex. 10.8 to 4/1/02 SEC filing, *available at* www.sec.gov/edgar.
> 10  Proposed Compl. PP 78-79, 83.

[*5] The Crowley board claimed to have approved the 1992 Agreement and 1998 Agreement in furtherance of their belief that maintaining the closely held nature of the Company was in the best interests of the Company's stockholders and would maximize long-term stockholder value. [11] The Company disclosed its rationale for entering into the split-dollar insurance agreements in its first public filing with the Securities and Exchange Commission ("SEC") on April 1, 2002. [12]

> 11  *Id.* at PP 64-81.
> 12  *Id.* at P 64.

Following the enactment of the Sarbanes-Oxley Act of 2002, [13] the Company ceased making any further premium payments as required by the 1992 Agreement because the board thought that such payments might violate *Section 402* of Sarbanes-Oxley. [14] Accordingly, in its April 19, 2004 proxy statement, the Company stated that Mr. Crowley had been solely responsible for paying the premiums on the insurance provided by the 1992 Agreement since the enactment of Sarbanes-Oxley in July 2002. [15]

> 13  *15 U.S.C. § 7201* (codified as amended in scattered sections of 15, 28 U.S.C.).
[*6]
> 14  Proposed Compl. P 87.
> 15  *Id.*

On December 23, 2003, the Company and Mr. Crowley entered into an agreement that terminated and settled the parties' obligations under the 1992 Agreement ("Settlement Agreement"). Pursuant to the Settlement Agreement, Mr. Crowley repaid the Company $ 7.5 million, which represented the total amount of premiums paid by the Company under the 1992 Agreement, and Mr. Crowley relinquished all of his rights under the 1992 Agreement. In return, the Company agreed to pay Mr. Crowley an amount equal to the interest payable by him on the financing he arranged to repay the Company and applicable taxes. [16]

> 16  *Id.*

Beginning in July 2002, the Company also suspended premium payments under the 1998 Agreement. [17] The underlying policies of the 1998 Agreement, however, remain pledged as security for repayment of premiums paid through July 2002. [18] No settlement of the 1998 Agreement [*7] has been reached.

> 17  *Id.* at P 86.
> 18  *Id.*

**B. Procedural History**

Plaintiffs filed this action on November 30, 2004. The complaint asserts derivative and direct claims for, among other things, breach of fiduciary duty, entrenchment, and self-dealing arising out of the 1992 and 1998 Agreements as well as the Settlement Agreement.

On February 25, 2005, Defendants filed a motion to dismiss under Court of Chancery Rule 12(b)(6). On February 28, 2005, Defendants amended their motion to add an additional ground for dismissal under Rule 23.1.

After Plaintiffs filed their answering brief in opposition to the motion to dismiss and Defendants filed their reply brief, the Court heard argument on the motion. During argument, Defendants raised a standing defense and, according to Plaintiffs, a number of other issues not addressed in Defendants' opening brief. Consequently, the Court requested supplemental briefing on at least the standing issue. Defendants filed their supplemental opening brief [*8] on October 24, 2005. On December 27, 2005, Plaintiffs moved to amend their complaint in lieu of filing a responsive supplemental brief, and Norberg moved to intervene as an additional shareholder plaintiff. Defendants oppose both motions.

## II. ANALYSIS

### A. Standards

#### 1. Court of Chancery Rule 15(aaa)

Court of Chancery Rule 15(aaa) provides in pertinent part:

> [HN1] Notwithstanding subsection (a) of this Rule, a party that wishes to respond to a motion to dismiss under Rules 12(b)(6) or 23.1 by amending its pleading must file an amended complaint, or a motion to amend in conformity with this Rule, no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed. In the event a party fails to timely file an amended complaint or motion to amend under this subsection (aaa) and the Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6) or 23.1, such dismissal shall be with prejudice (and in the case of complaints brought pursuant to Rules 23 or 23.1 with prejudice to the named plaintiffs only) unless the Court, for good cause shown, shall find that dismissal with prejudice would not be [*9] just under all the circumstances. [19]

19　Rule 15(aaa) was most recently revised on January 4, 2006, effective February 1, 2006.

[HN2] Chancery Rule 15(a) allows a party to amend it's pleading once as a matter of right at any time before a responsive pleading is served. Thereafter, a party may amend its pleading only with leave of the court. Leave is generally liberally granted unless there is a showing of substantial prejudice or legal insufficiency. [20] Notwithstanding subsection (a), Rule 15(aaa) limits the parties' ability to replead. The purpose of the rule is to minimize situations where this Court must adjudicate multiple motions to dismiss in the same action. [21] When confronted with a motion to dismiss under Rules 12(b)(6) or 23.1, Rule 15(aaa) requires plaintiffs to choose between standing on their complaint and answering the motion or amending (or seeking leave to amend) before the response to the motion is due. [22]

20　*Kahn Bros. & Co. v. Fischbach Corp., 1989 Del. Ch. LEXIS 109, at *9 (Sept. 19, 1989).*

[*10]

21　*Stern v. LF Capital Partners, LLC, 820 A.2d 1143, 1143-44 (Del. Ch. 2003).*
22　*Id. at 1146.*

#### 2. Motion to Intervene

[HN3] Court of Chancery Rules 24(a) and (b) address intervention of right and permissive intervention. They provide;

> [HN4] (a) Intervention of right. -- Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

> (b) Permissive intervention. -- Upon timely application anyone may be permitted to intervene in an action: (1) When a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising [*11] its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

[HN5] Although the Delaware courts embrace a liberal policy of allowing intervention, mere incantations of equitable principles will not stave off denial of a motion to intervene if the intervenor lacks standing to bring the claim or otherwise makes a claim that is inherently flawed as a matter of law. [23] A claim is inherently flawed or futile if it would not survive a motion to dismiss under either Court of Chancery Rule 23.1 or Rule 12(b)(6). [24]

23　*Flynn v. Bachow, 1998 Del. Ch. LEXIS 181, 1998 WL 671273, at *4 (Del. Ch. Sept. 18, 1998).*
24　*Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).*

### B. Should Plaintiffs be Granted Leave to Amend Under Rule 15

Plaintiffs argue that they should be allowed to amend their complaint as of right under Rule 15(aaa) because Defendants raised new arguments in their reply

brief, at argument, and **[*12]** in their supplemental briefing. Plaintiffs submit that these material changes in Defendants' argument deprived Plaintiffs of the notice contemplated by Rule 15(aaa). Defendants respond that the language of Rule 15(aaa) requires a party to amend or move to amend no later than the time such party's answering brief in response to a Rule 12(b)(6) or 23.1 motion is due. Because Plaintiffs submitted an answering brief rather than file an amended complaint, Defendants contend that Plaintiffs waived their right to amend their complaint.

In *Stern v. LF Capital Partners, LLC*, [25] the defendants moved to dismiss the plaintiffs' complaint in lieu of filing an answer. The plaintiffs chose to stand on the allegations of their complaint rather than amend the pleading to make more specific allegations, and filed an answering brief. After the defendants filed their reply brief, the Court heard argument on the motion. At argument, Vice Chancellor Lamb asked plaintiffs' counsel whether "there is some reason why, in the interests of justice, I should permit you notwithstanding the fact that you have answered [the motion to dismiss]...to amend your complaint," and plaintiffs' counsel responded: **[*13]** "Your Honor, I'm content to rest on the allegations and the inference that Your Honor can draw from it...." [26] Despite this response, the plaintiffs in *Stern* moved to amend their complaint shortly after the argument on the motion to dismiss.

    25  *820 A.2d 1143 (Del. Ch. 2003).*
    26  *Id. at 1145.*

Although Vice Chancellor Lamb noted that Rule 15(aaa) did not explicitly prescribe a standard for evaluating plaintiffs' untimely motion to amend, he concluded that the plaintiffs' maneuvers contradicted the text and underlying purpose of the rule. [27] In making this determination, the Court observed that Rule 15(aaa) embodies a legislative-type finding that a party-plaintiff has enough information from the motion to dismiss and opening brief to decide whether to replead or stand on the complaint as alleged and respond to the motion. [28] Thus, the Court held that the appropriate procedure was to decide the motion to dismiss first and then, if necessary, consider any motion **[*14]** to amend in light of the good cause requirement of Rule 15(aaa).

    27  *Id.*
    28  *Id.*

The present case involves another procedural guideline, as well. [HN6] Under the briefing rules, a party is obliged in its motion and opening brief to set forth all of the grounds, authorities and arguments supporting its motion. [29] A movant should not hold matters in reserve

for reply briefs. Instead, reply briefs should consist of material necessary to respond to the answering brief. [30]

    29  *See* Ct. Ch. R. 7(b) & 171.
    30  *Carlson v. Hallinan, 2006 Del. Ch. LEXIS 95, 2006 WL 1510759, at *1 (Del. Ch. May 22, 2006)* (waiving arguments not raised in opening brief); *U.S. v. Kossak, 275 F. Supp. 2d 525, 531 (D. Del. 2003)* (reserving new legal arguments for a reply brief is improper); *Acker v. Burlington N. & Santa Fe R.R. Co., 388 F. Supp. 2d 1299, 1302 n.2 (D. Kan. 2005).*

**[*15]** In this case, Defendants filed a motion to dismiss and their opening brief, and Plaintiffs filed an answering brief. Thereafter, despite the briefing rules, Defendants raised new arguments in their reply brief and at argument. For example, Defendants' reply brief raised an entirely new defense, claiming that an exculpatory clause in the Crowley corporate charter bars Plaintiffs' direct claims for monetary damage. [31] Similarly, at argument Defendants made standing arguments not previously raised in their briefs. Because the issue of standing had not been sufficiently briefed, the Court requested supplemental briefs on at least that new argument.

    31  Defs.' Reply Br. in Support of Defs.' Mot. to Dismiss at 19.

Upon filing their supplemental brief, Defendants again added arguments such as the requirement of continuous ownership of stock from the time of the alleged injury. In addition, during the course of the proceedings Defendants changed significantly the focus of a key argument advanced in their opening **[*16]** brief, switching from a challenge to the two agreements involving the insurance policies to a criticism of the Plaintiffs' failure in the original complaint to challenge specific board actions. Rather than file their own supplemental brief, Plaintiffs responded by riling a motion to amend their complaint and seeking to add a new plaintiff who owned Crowley stock at the requisite times to address the standing issues Defendants raised at argument and in their supplemental brief.

Generally, Plaintiffs would have surrendered the right to amend their complaint when they chose to file an answering brief on the motion to dismiss. By raising a completely new issue at argument and in a supplemental brief, however, Defendants effectively expanded their original motion and briefing. Had Defendants presented all of their arguments in the opening brief, Plaintiffs could have considered them in deciding whether to amend their complaint. Instead, Plaintiffs were forced to make a less than fully informed decision when they made the election required by Rule 15(aaa). In contrast to *Stern,* Plaintiffs were not afforded an adequate opportu-

nity to assess the pertinent information before filing their [*17] answering brief. In these circumstances, a strict application of Rule 15(aaa) may not be just.

Further, this case is procedurally in its early stages, mitigating any prejudice that might occur if Plaintiffs are granted leave to amend. Since Plaintiffs' filing of the case on November 30, 2004, all of the parties' activities have been directed to Defendants' motion to dismiss and related filings. Moreover, [HN7] Delaware law has a strong preference for deciding cases on the merits, rather than on procedural grounds. [32]

> [32]   One Va. Ave. Condo. Ass'n of Owners v. Reed, 2005 Del. Ch. LEXIS 115, 2005 WL 1924195, at *7 n.35 (Del. Ch. Aug. 8, 2005).

Plaintiffs contend that, notwithstanding Rule 15(aaa), they are entitled to amend their complaint where, as in this case, the Court permits a party to supplement its briefing in support of a motion to dismiss. I reject a per se exception to that effect as overly broad and inconsistent with the purpose of Rule 15(aaa). If a party's motion to dismiss and opening brief fully and fairly [*18] apprised the opposing party of the grounds for that motion, the Court should apply Rule 15(aaa) as written, even if some limited supplemental briefing is permitted. In this case, where Plaintiffs elected to file their brief in opposition to Defendants' motion to dismiss and to argue that motion before seeking leave to amend, that usually would mean that the Court would decide the motion to dismiss first. Then, if the motion were granted, the Court could entertain Plaintiffs' motion to amend, but only subject to the requirement under Rule 15(aaa) of a showing of good cause that a dismissal with prejudice would not be just under all the circumstances. [33] Defendants urge the Court to follow that procedure here. To avoid the application of Rule 15(aaa), Plaintiffs must show that Defendants failed to apprise them fully and fairly of the grounds for their motion to dismiss.

> [33]   See Stern v. LF Capital Partners, LLC, 820 A.2d at 1146-47.

Based on my review of the record, including the briefing [*19] and oral argument on Defendants' motion to dismiss and on Plaintiffs' motion to amend, I find that Plaintiffs did not have sufficient notice of the full scope of Defendants' motion when they filed their answering brief. In particular, Defendants failed to provide adequate notice of their standing argument. Plaintiffs also contend that Defendants raised several other new arguments in their reply brief, at argument and in their supplemental briefing. A careful review of the briefs and arguments confirms that Defendants may have recast some of their arguments during the proceedings on the motion to dismiss, but I find that, apart from the standing issue, De-

fendants did not materially alter the defenses presented in their motion.

Consequently, I reject the argument that Rule 15(aaa) precludes Plaintiffs from amending their complaint at least with respect to standing. Plaintiffs' proposed amendments, however, address more than the standing defense. In that regard, Plaintiffs have violated the spirit, if not the letter, of Rule 15(aaa) because the new allegations contained in their Proposed Complaint go well beyond the facts necessary to address Defendants' standing defense and include [*20] several matters germane to issues Defendants did fairly raise in their motion and opening brief. Nevertheless, based on the Court's preference for resolving matters on the merits and the absence of material prejudice to Defendants, I will grant Plaintiffs' motion to amend in its entirety. [34]

> [34]
>
> Because the procedural history of this case differs from Stern, I find unpersuasive Defendants' argument that the Court should adhere strictly to the procedure prescribed in Stern and decide the pending motion to dismiss first based solely on the original complaint. One of the benefits Rule 15(aaa) seeks to achieve is to minimize counterproductive and wasteful, multiple motions to dismiss. The problems caused by Defendants' belated addition of the standing issue to its motion to dismiss persuade me that allowing the Proposed Complaint is less likely to cause additional burden, expense and delay than the procedure Defendants urge.

I also find, however, that Plaintiffs' actions reflect too glib a rationalization [*21] for avoiding the application of Rule 15(aaa) and have resulted in at least some unnecessary briefing and argument by Defendants, to say nothing of the toll on the Court's time and resources. Accordingly, in the exercise of my discretion under Rule 15(aaa) and jurisdiction to enforce this Court's Rules generally, I order Plaintiffs to pay the sum of $ 10,000 to Defendants to reimburse them for at least a portion of their reasonable attorneys' fees and costs incurred in preparing their reply brief and arguing the motion to dismiss. [35]

> [35]   If the parties are unable to agree that the attorneys' fees and expenses incurred by Defendants in connection with their reply brief and the argument on the motion to dismiss amount to at least $ 10,000, Defendants shall submit appropriate evidence of the fees and costs they incurred within ten days of the date of this Memorandum Opinion.

## C. Would an Amendment to Allow the Intervention of Norberg as an Additional Stockholder Plaintiff Be Futile?

Plaintiffs assert [*22] that Norberg's ownership of Crowley shares since 1991 provides standing under *8 Del. C. § 327* [36] to challenge the 1992 Agreement, dated April 6, 1992, and the first of three amendments to that agreement dated May 1, 1995. Defendants contend that allowing Norberg to intervene would be futile because his claims are either time barred or moot. I address the laches and mootness arguments in turn.

> 36   *8 Del. C. § 327* provides: [HN8] "In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains or that such stockholder's stock thereafter devolved upon such stockholder by operation of law."

### 1. Laches

[HN9] In general, as a court of equity, the Court of Chancery does not strictly apply statutes of limitations. [37] Instead the court applies the doctrine of laches and uses analogous statutes of limitations [*23] as a presumptive time period for application of laches to bar a claim. [38] The Court also avoids inflexible or arbitrary application of a statute of limitations. [39] Thus, under the doctrine of equitable tolling, the statute does not run against a plaintiff until he or she had reason to know the facts alleged to give rise to the wrong. [40]

> 37   *U.S. Cellular Inc. Co. of Allentown v. Bell Atl. Mobile Sys., Inc., 677 A.2d 497, 502 (Del. 1996).*
> 38   *Orloff v. Shulman, 2005 Del. Ch. LEXIS 184, 2005 WL 3272355, at *10 (Del. Ch. Nov. 23, 2005).*
> 39   *Id.*
> 40   *Id.*

[HN10] A cause of action accrues at the moment of the wrongful act, even if the plaintiff is ignorant of the wrong. [41] The limitations period will be tolled, however, until such time that persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, if pursued, would lead to the discovery of the injury. [42] In situations where the challenged derivative action is a failure to disclose [*24] actionable self-dealing, laches does not begin to run until the shareholder knew or should have known of the facts alleging the wrong. [43] Therefore, Plaintiffs and Norberg must point to facts demonstrating that they were not on inquiry notice before November 30, 2001.

> 41   *Fike v. Ruger, 754 A.2d 254, 260 (Del. Ch. Nov. 19, 1999).*
> 42   *Id. at 261.*
> 43   *Kahn v. Seaboard Corp., 625 A.2d 269, 272-278 (Del. Ch. 1993)* (detailing this Court's history on the statute of limitations and laches for claims of self-dealing).

Defendants assert that Norberg's claim is barred by laches because the payments under the 1992 Agreement are legal obligations and do not constitute a continuing wrong. Since Plaintiffs' complaint was filed on November 30, 2004, Defendants contend that Norberg's allegations about the 1992 Agreement clearly violate the three year statute of limitations. [44] Plaintiffs characterize the 1992 Agreement and the premium payments the Corporation [*25] made under it as a continuing series of decisions and transactions, the culmination of which were not legally binding obligations. Therefore, because Plaintiffs allege each decision as one that the Company could suspend at any time, the culmination of events is an alleged wrongful act. Plaintiffs also contend that the alleged act, a failure to disclose, is an exception to a time barred claim. Thus, because Plaintiffs assert that Norberg did not discover the wrong until Defendants' disclosure of the 1992 Agreement on April 1, 2002, the complaint was timely commenced and within the statute of limitations and laches period.

> 44   [HN11] The statute of limitations for a breach of fiduciary duty is three years. *10 Del. C. § 8106; Ruggerio v. Estate of Poppiti, 2005 Del. Ch. LEXIS 32, 2005 WL 517967, at *4 (Del. Ch. Feb. 23, 2005).*

The Proposed Amended Complaint avers that Plaintiffs did not discover the 1992 Agreement until April 1, 2002 when Crowley released a 10-K describing the transaction. [45] [*26] Defendants' have not pointed to any other document that would have put Plaintiffs on notice of their claim earlier. Thus, Plaintiffs have at least colorably pled that they were not on inquiry notice of this claim for purposes of a motion to dismiss until April 1, 2002, and can argue that the laches period would not begin to run until then. Based on this factor and the arguments of Plaintiffs and Norberg that the 1992 Agreement is a continuing wrong, I find unpersuasive Defendants' argument that Norberg's intervention would be time-barred and therefore futile.

> 45   Proposed Amended Compl. PP 63-64.

### 2. Mootness

In addition, Defendants assert that the Settlement Agreement the Company entered into with Mr. Crowley

on December 23, 2003 moots Plaintiffs' claims that relate to the 1992 Agreement because it allegedly terminated that 1992 Agreement and resulted in Mr. Crowley repaying the Company for its contribution to the policies covered by that Agreement. Plaintiffs contend that the Proposed Complaint [*27] is not moot because it challenges both the Settlement Agreement and the 1992 Agreement; further, Plaintiffs challenge the Settlement Agreement as a sham transaction.

[HN12] The primary function of a court is to adjudicate actual controversies. [46] In the absence of a controversy, a case will be dismissed because a court cannot grant relief in the matter. [47] A matter may become moot if the legal issue in dispute ceases to be amenable to judicial resolution or if a claimant has been divested of standing. [48]

> 46   *Gen. Motors Corp. v. New Castle County, 701 A.2d 819, 823 (Del. 1997)*.
> 47   *Mentor Graphics Corp. v. Shapiro, 818 A.2d 959, 963 (Del. 2003)*; *Tyson Foods. Inc. v. Aetos Corp., 809 A.2d 575, 582 (Del. 2002)*.
> 48   *Id. (citing Gen. Motors Corp., 701 A.2d at 821)*.

Plaintiffs' claims appear likely to survive a motion to dismiss on mootness grounds. The Proposed Complaint alleges that the Settlement Agreement was unnecessary [*28] because the insurance policies covered by the 1992 Agreement were fully paid and there was no need for any further payments by the Company for those policies to continue in full force. [49] The Proposed Complaint also alleges that the purpose of the Settlement Agreement was improperly to remove these insurance agreements from the Company's books and place them entirely in the hands of Mr. Crowley and, at the same time, provide Mr. Crowley a release for any conduct relating to the 1992 Agreement. [50] Consequently, the Settlement Agreement at least arguably would not moot Plaintiffs' claims. Therefore, I conclude that Norbert's proposed intervention would not be futile and should be granted.

> 49   Proposed Compl. PP 89-95.
> 50   *Id.*

### III. CONCLUSION

For the reasons stated, I GRANT Plaintiffs' Motion For Leave to Amend and Norberg's Motion to Intervene, and further order Plaintiffs to pay Defendants the sum of $ 10,000 to reimburse them, at least in part, for the reasonable attorneys' fees [*29] and costs they incurred in connection with their motion to dismiss after the filing of Plaintiffs' answering brief. Plaintiffs and Norberg promptly shall file and serve their respective new pleadings.

**IT IS SO ORDERED.**

**EXHIBIT D**

1992 WL 205637, Kahn v. Tremont Corp., (Del.Ch. 1992)    **Page 1**

**\*205637**    UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware, New Castle County.

**Alan Russell KAHN, Plaintiff,**
v.
**TREMONT CORPORATION, Susan E. Alderton, Richard J. Boushka, J. Landis Martin, Glenn R. Simmons, Harold C. Simmons, Michael A. Snetzer, Thomas P. Stafford, Avy H. Stein and Valhi, Inc., Defendants.**

Civ. A. No. 12339.
Submitted: Aug. 4, 1992.

Decided: Aug. 21, 1992.

Joseph A. Rosenthal, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, of counsel: Silverman, Harnes, Obstfeld & Harnes, New York City, for plaintiff.

Jesse A. Finkelstein, and David L. Finger, Richards, Layton & Finger, Wilmington, of counsel: Timothy R. McCormick, and Joseph D. Cohen, Thompson & Knight, Dallas, Tex., for defendants Richard J. Boushka, Thomas P. Stafford, Avy H. Stein, and Tremont Corp.

Henry N. Herndon, Jr., and Kent A. Jordan, Morris, James, Hitchens & Williams, Wilmington, of counsel: Donald E. Scott, and Scott R. Bauer, Kirkland & Ellis, Denver, Colo., for defendants Susan E. Alderton, J. Landis Martin, Glenn R. Simmons, Harold C. Simmons, Michael A. Snetzer and Valhi, Inc.

MEMORANDUM OPINION

ALLEN, Chancellor.

**\*\*1**    This derivative action challenges the fairness to Tremont Corporation of a transaction in which it purchased from Valhi, Inc., its 44% stockholder, a 15% stock interest in another corporation (NL Industries, Inc.) controlled by Valhi. The claim is that the purchase was not in Tremont's interest, but was effectuated solely to advantage its stockholder, and was, as well, at an unfair price.

Defendants are Valhi, Inc. and the eight individuals who constitute Tremont's board of directors. No pre-suit demand to institute the suit was made, plaintiffs alleging, *inter alia,* (1) that a majority of Tremont's board are directors or officers of Valhi or its affiliates other than Tremont and, for that reason, are in a conflict of interest position with respect to the underlying transaction; (2) that defendant Harold Simmons controls Valhi, and "is able to hand pick" each of the directors of Tremont. (FN1)

Defendants answered in three pleadings, each of which denied the critical allegations of the complaint and asserted affirmative defenses. One pleading was filed on behalf of three directors who identified themselves as "the Special Committee"; one was filed on behalf of the Company and a third was filed on behalf of the remaining five directors and Valhi.

Shortly after the answers were filed, plaintiff filed a request for the production of documents. The document request was broad. Generally, it sought all documents referring or relating to (a) the tax consequences to Valhi of a series of recent transactions in the stock of Baroid Corporation and NL Industries, (b) the value of NL or its stock, (c) the Stock Purchase Agreement between Valhi and Tremont, (d) the consideration by Tremont of the Stock Purchase Agreement, (e) minutes of meetings of Tremont directors relating to the Stock Purchase Agreement, (f) Tremont's projected cash flows and capital expenditure requirements, (g) consideration of the Stock Purchase Agreement by an financial advisor of Valhi or of Tremont, (h) the financing by Tremont of the purchase, (i) any opinion or the possibility of any opinion by any investment bank or advisor with respect to fairness to Tremont of the Stock Purchase Agreement (or any purchase of NL shares), (j) any document evidencing or relating to any agreement between any member of the Special Committee and Mr. Simmons, Valhi or any person or entity under common control with Valhi and (k) other requests.

Defendants then moved to dismiss the complaint for failure to comply with Rule 23.1 and moved to stay all discovery. The motion to dismiss has not yet been presented.

Before me at this time is the motion to stay discovery, but the motion to dismiss is relevant because in presenting that joint motion, all defendants assert factual matters beyond the matters alleged in the complaint. For the reasons that follow I will deny the motion to stay discovery but

© 2008 Thomson Reuters/West. No claim to original U.S. Govt. works.

will, in the exercise of my responsibility to supervise the litigation of claims before me, limit discovery as described below.

\* \* \*

**\*\*2** The complaint alleges that a majority of the board of Tremont is under a disabling conflict with respect to the purchase of NL stock from Valhi because a majority of Tremont directors are alleged to be directors of Valhi or of its NL affiliate. On its face, this pleading would seem plausibly to satisfy the applicable legal test to excuse demand. *See Aronson v. Lewis,* Del.Supr., 473 A.2d 805 (1984); *Heineman v. Datapoint Corp.,* Del.Supr., --- A.2d ---- (Aug. 5, 1992). The answers admit the fact that a majority of Tremont's board is composed of persons who are also directors or officers of Valhi or its subsidiaries or affiliates other than Tremont.

The brief in support of the motion to dismiss, however, rests on new matters: that "three directors of Tremont ... are not affiliated in any way with either Valhi ... or NL." [It doesn't say that they are not affiliated with Mr. Simmons in some other way]. It asserts as a fact that on September 20, 1991 Tremont's board appointed these three individuals "as a Special Committee to analyze the proposed [purchase of NL shares from Valhi] on behalf of Tremont" (Opening Brief in Support of Motion to Dismiss at 3); and that the Special Committee engaged legal counsel and a financial advisor. *Id.* The brief appends minutes of an October 30, 1991 meeting of the Tremont board, which appear to evidence the receipt by the board of an oral report from the Special Committee to the effect that the proposed transaction was fair to Tremont and "in the best interests of the Company." The brief also asserts that NL stock was trading on the New York Stock Exchange at $12.75 at the time the Tremont board approved the $11.75 per share transaction.

\* \* \*

I need not address the question whether pre-suit demand on a board of directors is excused where a majority of the board is sufficiently interested in a transaction to disarm the board of the presumption accorded by the business judgment rule but where a minority of the board is independent with respect to the transaction involved. That question is not presented procedurally nor is the record developed with respect to facts relevant to it.

Here I face only the question whether a stay of discovery is warranted. This is a question on which judgment is required. A trial court maintains the power to supervise the discovery process in cases pending before it, *Fish Engineering Corp. v. Hutchinson,* Del.Supr., 162 A.2d 722 (1960). A part of the exercise of that responsibility entails the granting of stays of discovery in appropriate circumstances. 8 Wright & Miller, *Fed.Prac. & Proc.:* Civ.§ 2040. Generally that means the court must balance the savings that may be gained by avoiding discovery (if defendant prevails on a case dispositive motion) against the risks associated with delay that may be visited upon plaintiff (in the event defendant loses its case dispositive motion). In all events, there is no hard and fast rule that affords to defendants a right to a stay simply because a case dispositive motion has been filed. *See, e.g., Volge v. Anduser,* Del.Ch., C.A. 5639, Hartnett, V.C. (Aug. 29, 1978); *Schick Inc. v. Amalgamated Clothing and Textile Workers Union,* Del.Ch., C.A. 9066, Allen, C. (June 18, 1987). Thus, while the fact that a motion challenging the standing of plaintiff to prosecute a derivative claim will, in the first instance, be addressed to the face of the complaint, (FN2) *Aronson v. Lewis,* Del.Supr., 473 A.2d 805 (1984), may be conducive to a stay of discovery, it does not require one. *See Levine v. Smith,* Del.Supr., 591 A.2d 194, 209 (1991) (stay of discovery appropriate in a demand refused case).

\* \* \*

**\*\*3** In this instance it would be an error to stay discovery. Without prejudging the merits of defendants' motion to dismiss, I am able to say that that motion appears to raise one or more factual questions not raised by the complaint. The complaint appears to plead a transaction authorized by a board that is predominantly subject to a conflicting interest. The answer made to that point appears to be that the board in fact took action at the recommendation of a disinterested committee and by a vote that was not numerically dominated by those with an interest.

This may be so, and, if so, those facts may have the legal effect that defendants assert, but unquestionably in advancing this position defendants seek to rely upon facts beyond those pleaded in the complaint. It would, in my view, be an affront to very basic standards of our system of justice to accept the few additional facts that defendants

© 2008 Thomson Reuters/West. No claim to original U.S. Govt. works.

present as being not only true, but as being the only facts relevant to the question of the actual independence of the Special Committee.

In all events, the independence or not of the members of a special committee is a question of fact that turns not simply upon formality but upon the reality of the interests and incentives affecting the independent directors. When a plaintiff alleges that an interested transaction has been authorized and alleges a factual basis to conclude that the board of the Company is comprised predominantly of persons whose judgment would be affected by conflicting interest, plaintiff plainly should have the right to discover into the answering facts, relating to the alleged effectiveness of action of any independent committee of directors who are relied upon to protect the proponents of that transaction from justifying the fairness of its terms. *Cf. Zapata Corp. v. Maldonado,* Del.Supr., 430 A.2d 779, 788 (1981) (discovery may be allowed in demand excused cases where independent committee seeks dismissal).

But I do conclude that it is appropriate in this case (where plaintiff can suggest no special injury from delay) to focus discovery initially on the question of the special committee's independence and thus to limit plaintiffs discovery to matters that may bear upon the interests, motivations or incentives implicated by the assignment undertaken by the members of the Special Committee.

This limitation, of course, may be inefficient. Depositions of relevant individuals may need to be repeated if defendants do not ultimately prevail on their motion. But it may save time and effort if defendants do prevail and, in all events, I see no way to avoid the risk of inefficiency and still afford to plaintiff a reasonable opportunity to test the factual predicate of the defendants' motion: that the Special Committee was in fact independent.

\* \* \*

The device of the special committee of the board is one that has in recent years come to be widely employed. There is great utility in this device. In some instances, it appears to have served effectively to permit the board to function in the corporation's

interest, even though senior management was adverse to the corporation with respect to the transaction in question. *See, e.g., In re RJR Nabisco, Inc. Shareholders Lit.,* Del.Ch., C.A. 10389, Allen, C. (Jan. 31, 1989). In other instances the form of an independent committee seemed to mask an ineffectual or corrupted effort. *See, e.g., Mills Acquisition Co. v. Macmillan, Inc.,* Del.Supr., 559 A.2d 1261 (1989); *In re Trans World Airlines, Inc. Shareholders Lit.,* Del.Ch., C.A. 9844, Allen, C. (Oct. 21, 1988). The processes of adjudication of corporate disputes, while mindful of the special risks and costs associated with derivative litigation, must be sufficient to detect and distinguish these two situations that involve arguably independent board committees. Whether the operation of a special committee will be deemed to qualify a transaction for the ordinary presumption that attaches to the action of a disinterested board should, in my opinion, turn on a specific evaluation of the facts of the case. At least when plaintiff can allege with sufficient particularity that a transaction with an arguably controlling shareholder was authorized by a board composed predominantly of persons with a conflicting interest, and an independent committee's action is set forth as an answer to that claim of interest, fairness to plaintiff and due regard for the proper administration of the derivative remedy dictates, in my opinion, that limited discovery into the independence of the committee is appropriate.

**\*\*4.** The motion to stay will therefore be denied.

(FN1.) Standing alone this second allegation is plainly insufficient to excuse pre-suit demand under Rule 23.1. *See Aronson v. Lewis,* Del.Supr., 473 A.2d 805, 815 (1984); *Kaplan v. Cente Corp.,* Del.Ch., 284 A.2d 119, 123 (1971).

(FN2.) I say in the first instance because when the pleading itself is sufficient to excuse pre-suit demand, defendants are, of course, still free to show on summary judgment by uncontradicted facts that the allegations made are untrue and there is therefore no proper standing. Thus a motion under Rule 23.1 to disable plaintiff from pursuing derivative litigation can be decided on the complaint, or on affidavits.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL LEE ROSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C. A. No. 06-370-JJF |
| v. ) | |
| ) | TRIAL BY JURY |
| FIRST CORRECTIONAL MEDICAL, ) | OF TWELVE DEMANDED |
| CORRECTIONAL MEDICAL SERVICES, ) | |
| INC., and DR. NIAZ, ) | |
| ) | |
| Defendants. ) | |

### [PROPOSED] ORDER

Plaintiff Michael Lee Rose ("Mr. Rose"), having moved for an order permitting limited discovery without a Rule 26(f) conference and an extension of time pending the completion of discovery to respond to Defendants Correctional Medical Services, Inc. and Dr. Muhammed A. Niaz's motion to dismiss, and the Motion having been considered and for good cause shown, it is hereby ORDERED this _____ day of _____, 2008 that:

(1)     Plaintiff's Motion is GRANTED.

(2)     Limited discovery shall proceed without a conference required by Rule 26(f) of the Federal Rules of Civil Procedure.

(3)     Pursuant to the Federal Rules of Civil Procedure, Defendants shall respond to Mr. Rose's discovery requests, produce responsive documents, and make available for deposition 30(b)(6) witness(es) designed by Correctional Medical Services, Inc. as noticed by Plaintiff or as otherwise reasonably agreed upon by counsel for the parties.

(4)     Mr. Rose shall respond to Defendants' motion to dismiss on or before _____.

_____
J.